Michael Shklovsky, Esq. (Bar No. 255893)
Rose M. Zoia, Esq. (Bar No. 134759)
Christopher M. Mazzia, Esq. (Bar No. 95513)
ANDERSON ZEIGLER
A Professional Corporation
50 Old Courthouse Square, 5th Floor
Santa Rosa, CA 95404
Telephone:    707/545-4910
Facsimile:    707/544-0260
Email:        mshklovsky@andersonzeigler.com
              rzoia@andersonzeigler.com
              cmazzia@andersonzeigler.com

David C. Lee, Esq. (Bar No. 193743)
Ilse C. Scott, Esq. (Bar No. 233433)
NOSSAMAN LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:    415/398-3600
Facsimile:    415/398-2438
Email:        dlee@nossaman.com
              iscott@nossaman.com

Attorneys for Plaintiff David Pratt

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PRATT, an individual, directly and derivatively on behalf of 3G GREEN GARDEN GROUP, LLC D.B.A. EMERALD HARVEST, a California Limited Liability Company,<br><br>    Plaintiff,<br><br>    vs.<br><br>ROBERT C. HIGGINS, an individual; SHARON E. HIGGINS, an individual; 3G GREEN GARDEN GROUP, INC., a Canadian Corporation; and EMERALD HARVEST, INC., a Canadian Corporation,<br><br>    Defendants,<br><br>    -and-<br><br>3G GREEN GARDEN GROUP, LLC D.B.A. EMERALD HARVEST, a California Limited Liability Company,<br><br>    Nominal Defendant. | Case No. 4:22-cv-04228-HSG<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1.  **Breach of Fiduciary Duty**<br>2.  **Breach of Duty of Good Faith and Fair Dealing**<br>3.  **Receiving Improper Distributions**<br>4.  **Unjust Enrichment and Restitution**<br>5.  **Conversion**<br>6.  **Concealment**<br>7.  **Accounting**<br>8.  **Dissociation**<br>9.  **Appointment of Receiver**<br>10. **Violation of Bus. & Prof. § 17200**<br>11. **Fraudulent Concealment**<br>12. **Violation of Penal Code § 496**<br>13. **Violation of Penal Code § 502**<br>14. **Aiding and Abetting**<br><br>**Jury Trial Demanded**<br><br>**Complaint Filed: 6/15/2022** |

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

Plaintiff David Pratt hereby brings this action individually on behalf of himself, and derivatively on behalf of nominal defendant 3G Green Garden Group, LLC d.b.a. Emerald Harvest, and complains against the Defendants and alleges as follows:

**THE PARTIES**

1. Plaintiff David Pratt ("Mr. Pratt" or "Plaintiff") is now, and at all times relevant herein was, a resident of Sonoma County in the State of California.

2. Plaintiff is informed and believes, and thereon alleges, that defendant Robert C. Higgins ("Mr. Higgins") is now, and at all times relevant herein was, a resident of British Columbia, Canada, and was a co-manager of 3G Green Garden Group, LLC d.b.a. Emerald Harvest, along with his spouse and defendant herein, Sharon E. Higgins.

3. Plaintiff is informed and believes, and thereon alleges, that defendant Sharon E. Higgins, a.k.a. Sharon E. Girard ("Mrs. Higgins") is now, and at all times relevant herein was, a resident of British Columbia, Canada, and was a co-manager of 3G Green Garden Group, LLC d.b.a. Emerald Harvest, along with her spouse, Robert C. Higgins. (Mr. and Mrs. Higgins are collectively referred to as "the Higgins".)

4. Plaintiff is informed and believes, and thereon alleges, that defendant Emerald Harvest, Inc. ("EHI") is now, and at all times relevant herein was, a corporation duly formed and incorporated under the laws of British Columbia, Canada. Plaintiff is informed and believes, and thereon alleges, that EHI is doing business in Sonoma County in the State of California.

5. Plaintiff is informed and believes, and thereon alleges, that defendant 3G Green Garden Group, Inc. ("3GI") is now, and at all times relevant herein was, a corporation duly formed and incorporated under the laws of British Columbia, Canada. Plaintiff is informed and believes, and thereon alleges, that 3GI is doing business in Sonoma County in the State of California.

6. Plaintiff is informed and believes, and thereon alleges, that the nominal defendant 3G Green Garden Group, LLC d.b.a. Emerald Harvest ("3GL") is now, and

at all times relevant herein was, a manager-managed limited liability company duly formed under the laws of the State of California and doing business in Sonoma County in the State of California, with its principal place of business located at 1399 Corporate Center Parkway, Santa Rosa, CA 95407. Now, and at all times relevant herein, Mr. Higgins has held a 51% member interest in 3GL, and Mr. Pratt has held a 25% member interest in 3GL. Since approximately February 2015, Mrs. Higgins has held a 24% member interest in 3GL, which interest was unilaterally assigned by Mr. Higgins to Mrs. Higgins, though this assignment was made without Mr. Pratt's knowledge at the time.

**AGENCY**

7. Plaintiff is informed and believes, and thereon alleges, that in doing the tortious acts, breaches of contract, and other conduct alleged herein, each of the defendants was the agent, employee and/or in control of each other, directly or indirectly, and acted as agent for one another, and in doing the things alleged herein was acting within the scope of that agency and employment and with the permission and consent of their co-defendants. Plaintiff is informed and believes, and thereon alleges, that each of the defendants is responsible for the acts or omissions of any person or entity working for such defendant, either directly or indirectly, who may have been employed on such defendant's behalf.

8. Plaintiff is informed and believes, and thereon alleges, that Mr. Higgins is the principal owner, officer, director, member, manager, agent and alter ego of EHI and 3GI, and in doing the things herein described, he was acting within the scope of his authority as such owner, officer, director, member, manager, agent and/or alter ego.

9. Plaintiff is informed and believes, and thereon alleges, that EHI and 3GI are business entities owned by Mr. Higgins. At all relevant times since their formation, Mr. Higgins was and is the majority and controlling owner and member of EHI and 3GI.

10. Plaintiff is informed and believes, and thereon alleges, that there was, at all relevant times, and is, a unity of interest and ownership between EHI and 3GI, on the

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

one hand, and Mr. Higgins, on the other hand, such that they are indistinguishable from each other and any individuality and separateness between them did not exist.

11. Plaintiff is informed and believes, and thereon alleges, EHI and 3GI were, at all relevant times, completely controlled, dominated, managed and operated by Mr. Higgins, and the assets of EHI and 3GI at all relevant times since the formation of these entities have been, intermingled to suit the convenience of Mr. Higgins. Plaintiff is informed and believes, and thereon alleges, that Mr. Higgins failed to observe corporate formalities with respect to EHI and 3GI. For example, Mr. Higgins failed to hold actual board meetings, prepare minutes, or otherwise operate EHI and 3GI as actual, independent companies. Mr. Higgins controls EHI and 3GI and makes all decisions for them.

12. Plaintiff is informed and believes, and thereon alleges, that Mr. Higgins and EHI and 3GI were at all relevant times, and are, the alter egos of one another. Adherence to the fiction of the separate existence of EHI and 3GI as distinct from Mr. Higgins would permit an abuse of the corporate privilege and would promote injustice.

13. In the alternative, Plaintiff is informed and believes, and thereon alleges, that the Higgins, in their individual capacities and to benefit themselves, on the one hand, and EHI and 3GI, on the other hand, entered into a conspiracy to engage in the tortious conduct directed toward Mr. Pratt individually and towards 3GL as set forth herein, including but not limited to a conspiracy to divert the assets and intellectual property of 3GL to the detriment of 3GL and its members, including Mr. Pratt (as detailed below). Plaintiff is further informed and believes, and thereon alleges, that EHI and 3GI were aware of the Higgins' intent and plan to engage in such wrongful conduct, and knowingly participated in the conspiracy. As a result of this conspiracy, Mr. Pratt individually, as well as 3GL and its members, including Mr. Pratt, were significantly harmed.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, excluding interest and costs.

15.     This Court further has supplemental jurisdiction over all state law claims asserted by Plaintiff pursuant to 28 U.S.C. § 1367, including but not limited to, 3GL's derivative action pursuant to Corporations Code section 17709.02.

## BACKGROUND FACTS

### A.     Early Days of the Business

16.     Mr. Pratt used to be close friends with Mr. Higgins and Mrs. Higgins.  He was a groomsman at the Higgins' wedding and their families spent time together.

17.     On or about January 20, 2014, Mr. Higgins and Mrs. Higgins approached Mr. Pratt with a proposal that they start a new business that would develop, manufacture and sell advanced fertilizers for plants, with a focus on marketing the products of the business to hydroponic and specialty high value agricultural suppliers in the United States and abroad.

18.     At the time, Mr. Pratt had significant expertise in the development and marketing of plant fertilizers, and he had extensive worldwide marketing experience and connections in the hydroponic agricultural industry.

19.     Within days, Mr. Higgins, Mrs. Higgins and Mr. Pratt reached a verbal agreement to form a California limited liability company ("the LLC") on the following terms ("the Agreement"):

  a.   The principal place of business of the LLC would be located in Santa Rosa, California, with an administrative office to be eventually opened in British Columbia, Canada.

  b.   The LLC would own all the intellectual property rights created in connection with the business, including but not limited to fertilizer

formulas, trademarks, copyrights, designs and patents. The LLC would also own all the goodwill associated with the new business.

    c. Mr. Higgins would hold 51% of the membership interest in the business and serve as the LLC's manager and Chief Executive Officer, in charge of financial affairs and management of the business, performing much of his work from British Columbia, Canada.

    d. Mr. Pratt would hold 25% membership interest in the business and serve as the President to oversee the buildout of production facilities in Santa Rosa, California, spearhead the development of fertilizer formulas with the assistance of Dr. David Hager who would be hired by 3GL, and head the sales team once the product was ready for market.

    e. Mrs. Higgins would not have an ownership interest but would serve as the Chief Operating Officer of the LLC, in charge of business operations, banking and employment practices in California, as well as accounting, records keeping, logistics and procurement of materials needed for the manufacture, bottling and sales of plant fertilizers.

    f. The remaining 24% of ownership interest would be "reserved" and distributed over time, with the consent of Mr. Higgins and Mr. Pratt, to various team members of the business to incentivize, retain and reward key personnel.

    g. Mr. Higgins and Mr. Pratt would provide the initial owner contributions needed to get the business off the ground, with said contributions to be repaid from the profits of the business.

    h. Net profits of the business would be distributed to its owners in accordance with and proportionate to their ownership interest.

20. To implement the terms of the Agreement, on or about January 27, 2014, Mr. Pratt formed 3GL by filing Articles of Organization with the California Secretary

6

of State. Since its formation, 3GL has operated without a signed Operating Agreement.

21. Mr. Pratt spent the next several months setting up 3GL's business operations in Santa Rosa, California. His efforts included, but were not limited to:

a. Recruiting on behalf of 3GL and working with specialists, including Dr. Hager, to develop from scratch multiple formulas for plant fertilizers;

b. Registering on behalf of 3GL several domain names to be used for a business website;

c. Securing on behalf of 3GL a commercial lease at 1399 Corporate Center Parkway in Santa Rosa, with Mr. Pratt as the signatory thereunder;

d. Opening on behalf of 3GL a company bank account in California with the Wells Fargo Bank;

e. Retaining Edward Sherman as 3GL's legal counsel to begin the process of 3GL applying for trademark registrations with the United States Patent and Trademark Office ("USPTO") for proprietary product names;

f. Working on behalf of 3GL with governmental agencies to obtain land use permits including the initial Zoning Clearance and the Conditional Use Permit;

g. Securing on behalf of 3GL a California Reseller's Permit;

h. Obtaining on behalf of 3GL business liability and workers compensation insurance;

i. Providing feedback on the work of a graphic designer, Christopher Bullock, who was hired by 3GL, and subsequently listed on 3GL's website as part of its staff, to create original artwork for 3GL's product labels, packaging and promotions;

7

j. Submitting on behalf of 3GL an application for fertilizer license with the California Department of Food and Agriculture Fertilizing Materials Inspection Program;

k. Setting up on behalf of 3GL the internet, phone and utilities accounts for the 1399 Corporate Center Parkway location;

l. Sourcing on behalf of 3GL the manufacturing materials and equipment; and

m. Recruiting on behalf of 3GL the product development, manufacturing, warehousing, marketing and sales teams.

22. On or about March 11, 2014, 3GL's retained legal counsel filed an application for the registration of the "EMERALD HARVEST" trademark. The first use date was declared as August 1, 2014. The EMERALD HARVEST mark was registered on May 26, 2015 (Reg. No. 4,744,844) reflecting 3GL as the owner of the Mark. Over the years, 3GL filed approximately 25 additional trademark applications, six of which were registered by the USPTO and reflected 3GL as the registered owner.

23. Plaintiff is informed and believes, and thereon alleges, that in further implementation of the Agreement, on or about April 30, 2014, Mr. Higgins registered a partnership in British Columbia, Canada, by the name of 3G Green Garden Group ("3GP"). The registration reflected the names of three (3) individual partners: Mr. Higgins, Mrs. Higgins and Mr. Pratt.

24. In June 2014, Mr. Pratt and Mr. Higgins traveled to Toronto, Canada, to attend a meeting with a powerful group of industry leaders with significant investments in the hydroponics industry to explore consulting and wholesale opportunities in Canada and elsewhere.

25. By mid-July 2014, 3GL was producing sufficient volumes of fertilizer test batches, enabling the business to begin field trials on large-scale hydroponic farms in Northern California, the owners of which volunteered to participate because of their

familiarity with Mr. Pratt.  3GL fertilizer product performed exceptionally well out of the gate.

26.    By early November 2014, product labels depicting Mr. Bullock's artwork were ready and 3GL started registering its products in different states across the United States.  The labels displayed the name of the manufacturer as "Emerald Harvest, a division of 3G Green Garden Group LLC."  Another notation used on the labels was "Guaranteed by Emerald Harvest • 1399 Corporate Center Parkway, Santa Rosa, CA 95407."

27.    As of the end of 2014, Mr. Pratt had advanced approximately $235,000 in start-up capital for 3GL, without any reimbursements or payment for his work.

28.    Plaintiff is informed and believes, and thereon alleges, that in or before February 2015, Mr. Higgins unilaterally granted the reserved 24% membership interest in 3GL to his wife, Mrs. Higgins.  This action was done without proper notice or a vote by the members of 3GL.  Mr. Pratt learned about this transfer after the fact, through one of Mrs. Higgins' email communications.

29.    On or about February 18, 2015, 3GL filed a fictitious business name statement with the Sonoma County Clerk for "Emerald Harvest."  This statement was signed by Mr. Higgins on behalf of 3GL.

30.    On or about April 20, 2015, 3GL launched the Emerald Harvest brand and its family of fertilizer products at the High Times Cup in Denver, Colorado, as well as through its website.

31.    In or about June 2015, at the insistence of Mr. Higgins, 3GL switched the domain name for its website from "3ggreengardengroup.com" to "emeraldharvest.co," with the new domain hosted in Canada.

32.    Plaintiff is informed and believes, and thereon alleges, that there was no compelling business need to host 3GL's website in Canada, but unbeknownst to Mr. Pratt at the time, it was done because Mr. Higgins wanted himself and Mrs. Higgins to

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

have complete control over the domain name, management and contents of the website.

**B.** **The Higgins Exercised Control Over 3GL's Operations in California**

33. Mr. Higgins is the co-founder, CEO and majority owner of 3GL, and he co-managed the affairs of the company with his wife, Mrs. Higgins (to whom he apparently unilaterally gifted 24% of 3GL without notice to Plaintiff). Although his management of 3GL was largely strategic in nature (as opposed to day-to-day management), he monitored the activities of the company closely, and issued directives that he be copied on all correspondence related to 3GL, including internal and external correspondence with staff, contractors, clients, potential clients, distributors, suppliers, potential suppliers, attorneys and any other third party relating to company's business.

34. Mrs. Higgins managed the day-to-day operations of 3GL. After 3GL was formed, she co-managed 3GL and, from its inception, took steps to assert near total control over 3GL's financial affairs and business operations in California:

    a. Mrs. Higgins obtained online access to 3GL's operating account at the Wells Fargo Bank in California, transacted payments and wire transfers from that bank account, and assumed all responsibility over banking and invoice payments in May 2015 to the exclusion of Plaintiff (who she repeatedly instructed not to access banking information or view check images because it purportedly resulted in additional bank charges to 3GL);

    b. Mrs. Higgins exercised control over which credit applications 3GL would execute for various material and equipment suppliers in California and elsewhere in the United States, and was identified as 3GL's contact person for all accounts payable;

    c. Mrs. Higgins oversaw and monitored 3GL's operations in California, including product inventory, list of all sales, receivables and payables,

all recurring monthly payments, and daily reports of products produced and sold;

d.  Mrs. Higgins assumed all responsibility for 3GL's payables and related paperwork;

e.  Mrs. Higgins insisted that all of 3GL's business mail received in California had to remain sealed and unopened and forwarded directly to her in Canada at least weekly via FedEx;

f.  Mrs. Higgins exercised sole authority and approval for all 3GL payments to suppliers, equipment manufacturers and service providers, as well as the issuance of reimbursement checks to 3GL's employees and contractors;

g.  Mrs. Higgins controlled staff hiring, compensation, work schedules, payroll, employment policies and any other human resources issues at 3GL's office in California and elsewhere;

h.  Mrs. Higgins dictated the specific types of business information provided to insurers for purposes of obtaining business liability and workers compensation insurance in California, and she issued instructions when insurance-related documents were to be signed by 3GL;

i.  Mrs. Higgins transacted lease negotiations for California office and warehousing spaces of 3GL, assumed control over communications with 3GL's brokers and landlords, and issued and mailed rent checks to California from her office in Canada;

j.  Mrs. Higgins directed the work of 3GL's intellectual property attorney, including but not limited to, instructing him to mail all registered trademark certificates and design patent approvals obtained on behalf of 3GL to her in Canada; and

k. Mrs. Higgins instructed 3GL's suppliers and distributors to remove Plaintiff from their correspondence.

35. Mrs. Higgins utilized 3GL email address (sharon@3ggreengardengroup) containing a signature block listing her as "COO & Member of the Board … 3G Green Garden Group, LLC … 1399 Corporate Center Parkway, Santa Rosa[.]"

36. Despite serving as 3GL's President, by early May 2015, Plaintiff relinquished all financial and banking responsibilities to Mrs. Higgins at her express direction. Mr. Pratt focused his subsequent efforts on behalf of 3GL exclusively on product development, marketing and sales, and—until year 2021—he faithfully followed Mrs. Higgins' express directive not to access 3GL's bank account records or open 3GL's business mail, including business bank statements.

37. In 2016, Mrs. Higgins continued to consolidate her control over 3GL's operations in Santa Rosa, California. On January 7, 2016, she approved the purchase of a new fertilizer mixer machine in California. On January 20, 2016, she reiterated her instructions that all mail, receipts and expenses must be forwarded to her on a weekly basis. On January 27, 2016, she obtained a login for the City of Santa Rosa website and renewed 3GL's business license. On April 13, 2016, Mrs. Higgins authorized renewal of insurance policies for 3GL in California.

38. In April 2016, Mrs. Higgins instructed Mr. Pratt to set up his automatic signature on the computer at the main desk in the production facility in Santa Rosa, California. From this point onward, Plaintiff stopped physically signing 3GL's checks and his electronic signature was systematically used by the Higgins in making transfers from 3GL's California bank account to themselves, EHI, 3GI and others. Mr. Pratt had no insight into these transfers because he had been specifically instructed to forward all business-related mail, including bank statements, to Mrs. Higgins in an unopened state, and had further been instructed not to access the online bank records to avoid purported bank charges.

39. In May 2016, Mrs. Higgins issued directives that every 3GL employee in California must adhere to a strict work schedule pre-approved by Mrs. Higgins. In August 2016, Mrs. Higgins personally approved a vacation request of a 3GL employee in California. In September 2016, Mrs. Higgins assumed effective control over the U.S. PayPal account of 3GL. In October 2016, after Mr. Pratt paid a supplier's invoice "early," Mrs. Higgins admonished him: "let me make the decisions on where funds are distributed[.]" Also in October 2016, Mrs. Higgins issued directives to 3GL's California-based employees that "sales reps are not allowed in the manufacturing areas [in Santa Rosa] at any time … there are no exceptions to these policies."

40. In February 2018, Mrs. Higgins issued directives to consolidate URL domain names registered in the name of 3GL "in one central location under Emerald Harvest" and subject to her and Mr. Higgins' control.

41. In April 2018, Mrs. Higgins instructed Mr. Pratt to authorize Wells Fargo Bank in California to remove the $10,000 limit on outgoing wire transfers that was established when 3GL opened the account in 2014 so as to afford Mrs. Higgins the exclusive ability to transact voice wire transfers.

42. Plaintiff is informed and believes, and thereon alleges, that all of Mrs. Higgins' actions on behalf of 3GL were done with the express or implied knowledge, direction, authorization and approval of Mr. Higgins. In effect, Mrs. Higgins acted as a de-facto co-manager of 3GL in overseeing and directing the day-to-day business affairs of 3GL in California.

**C. Defendants' Diversion of 3GL's Assets For Their Personal Gain**

43. On or about November 19, 2016, having gone for 34 months without any pay or reimbursements for his owner contributions to 3GL despite expending extensive efforts and work on behalf of 3GL, Mr. Pratt questioned Mr. Higgins about when he would receive compensation, distributions and/or repaid capital advances from 3GL. Mr. Higgins responded by putting forth a revenue target that was reached in or about 2020 but never honored.

44. Up to this point in time, the Higgins had told Plaintiff that 3GL was not profitable, and Mr. Pratt had no information to believe otherwise.

45. Unbeknown to Plaintiff at the time, on or about December 15, 2014, Mr. Higgins registered EHI (defendant Emerald Harvest, Inc.) as a Canadian corporation with offices in British Columbia, Canada. The registration listed Mr. Higgins as the sole officer and director of EHI. The formation of EHI and the business purpose of that entity were concealed from Mr. Pratt.

46. Plaintiff is informed and believes, and thereon alleges, that the creation by Mr. Higgins of a Canadian corporation with the same name as 3GL's brand name, trademark and soon-to-be registered DBA was intentionally done for the purposes of confusing and misleading Mr. Pratt and other individuals and business entities involved or doing business with 3GL, as well as used as a vehicle to obscure the fraudulent conduct of Mr. Higgins and Mrs. Higgins. For example, Mr. Higgins would routinely utilize a signature block in his business emails that showed him as the CEO of "Emerald Harvest," without indicating whether he was referring to 3GL or EHI.

47. Plaintiff is also informed and believes, and thereon alleges, that on or about January 1, 2017, Mr. Higgins formed defendant 3GI (3G Green Garden Group, Inc.), a Canadian corporation located in British Columbia. The formation of 3GI and the business purpose of that entity were concealed from Mr. Pratt. On January 1, 2017, Big Bear Salmon Charters Ltd., another Canadian business entity owned by Mr. Higgins, was merged with 3GI. Mr. Higgins listed himself as the sole Director of 3GI. Mr. Higgins did not inform or consult with Mr. Pratt about the formation of 3GI, the merger of Big Bear Salmon Charters Ltd., or the purposes behind this business, which mirrored the name of 3GL. As detailed below, Mr. Pratt discovered the existence of 3GI in 2022, when he conducted a forensic inspection of 3GL's bank records and discovered millions of dollars in unexplained transfers to that entity authorized by Mr. Higgins and/or Mrs. Higgins.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

48. Specifically, while on medical leave in mid-2021, Mr. Pratt reflected on the fact that after seven (7) years of working around the clock on 3GL's business, he only occasionally received "guaranteed pay" and received no profit distributions, while according to Mr. Higgins and Mrs. Higgins, 3GL was almost constantly in financial distress despite producing and selling tens of millions of dollars' worth of fertilizer products.

49. In mid-2021, Mr. Pratt decided to violate the express instructions he received over the years from Mr. Higgins and Mrs. Higgins to not access 3GL's bank account records, and worked for weeks with the Wells Fargo Bank to provide him copies of 3GL's account statements and cancelled checks. Upon receipt and after a detailed forensic review of these statements and checks, Mr. Pratt discovered for the first time that since 2015, millions of dollars have been wrongfully siphoned by the Higgins to themselves, EHI, 3GI, and to dozens of third parties for the Higgins' personal benefit and to the detriment of 3GL. The Higgins orchestrated these transfers by facilitating wire transfers and/or writing checks through 3GL's California bank accounts, particularly Mrs. Higgins who had assumed all responsibility for the financial dealings of 3GL, including managing its bank accounts in California. EHI and 3GI – companies both owned by Mr. Higgins – in turn, improperly accepted the diverted monies that Mrs. Higgins and/or Mr. Higgins transferred directly from 3GL's bank accounts. Plaintiff is informed and believes, and thereon alleges, that there was no legitimate basis for the transfers of millions of dollars from 3GL to the recipients identified below, including EHI and 3GI. Moreover, the Higgins never disclosed the existence or purpose of these transactions. Mr. Pratt's investigation into 3GL's finances continued into year 2022, including his review of 3GL's Bank of America account statements.

50. The results of Mr. Pratt's findings in 2022 are summarized below.

51. **Transfers from 3GL to EHI**. Based on Mr. Pratt's review of 3GL's bank statements for the period from 2015 to April 2022, the following chart reflects the

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

undisclosed and wrongful transfers by the Higgins from 3GL to EHI during that time period; transfers of 3GL's cash assets that EHI had no legitimate basis to receive, and which were designed to unlawfully enrich the Higgins and EHI to the detriment of 3GL and its members:

| Dates of Transfers | Amount Transferred (at least) |
| --- | --- |
| Jul. 27, 2015 to Dec. 23, 2015 | $46,600 |
| Year 2016 | $222,000 |
| Year 2017 | $477,800 |
| Year 2018 | $305,600 |
| Year 2019 | $362,000 |
| Year 2020 | $1,719,000 |
| Year 2021 | $1,678,000 |
| Feb. 8, 2022 to Apr. 5, 2022 | $200,000 |
| **Total Transfers:** | **$5,011,000** |

52. **Transfers from 3GL to 3GI**. Based on Mr. Pratt's review of 3GL's bank statements for the period from 2015 to March 2022, the following chart reflects the undisclosed transfers by the Higgins from 3GL to 3GI during that time period; again, transfers of 3GL's cash assets that 3GI (like EHI) had no legitimate basis to receive, and which were designed to unlawfully enrich the Higgins and 3GI to the detriment of 3GL and its members:

| Dates of Transfers | Amount Transferred (at least) |
| --- | --- |
| July 1, 2015 to Dec. 23, 2015 | $69,380 |
| Year 2016 | $149,100 |
| Year 2017 | $233,100 |

| | Amount |
|---|---|
| Year 2018 | $163,129 |
| Year 2019 | $318,000 |
| Year 2020 | $1,200,000 |
| Year 2021 | $643,000 |
| Feb. 8, 2022 to Mar. 29, 2022 | $126,000 |
| **Total Transfers:** | **$2,901,709** |

53.     **Transfers from 3GL to Mr. Higgins**.  Based on Mr. Pratt's review of 3GL's bank statements for the period from 2015 to December 2021, the following chart reflects the undisclosed transfers by the Higgins from 3GL to Mr. Higgins individually during that time period; transfers of 3GL's cash assets to Mr. Higgins designed to unlawfully enrich himself to the detriment of 3GL and its members:

| Dates of Transfers | Amount Transferred (at least) |
|---|---|
| Aug. 24, 2015 to Dec. 30, 2015 | $275,700 |
| Year 2016 | $560,000 |
| Year 2017 | $1,060,670 |
| Year 2018 | $837,955 |
| Year 2019 | $1,232,937 |
| Year 2020 | $1,147,000 |
| Year 2021 | $1,642,000 |
| **Total Transfers:** | **$6,756,263** |

54.     **Transfers from 3GL to Mrs. Higgins**.  Based on Mr. Pratt's review of 3GL's bank statements for the period from 2015 to December 2021, the following chart reflects the undisclosed transfers by the Higgins from 3GL to Mrs. Higgins individually during that time period; transfers of 3GL's cash assets to Mrs. Higgins designed to unlawfully enrich herself to the detriment of 3GL and its members:

| Dates of Transfers | Amount Transferred (at least) |
|---|---|
| Year 2017 | $62,000 |
| Year 2018 | $25,500 |
| Year 2019 | $49,500 |
| **Total Transfers:** | **$137,000** |

55.    **Transfers from 3GL for Mr. and Mrs. Higgins' Personal Benefit**.  In addition to the above, Mr. Pratt has discovered many other undisclosed transfers from 3GL to third parties that appear to have been made for the personal benefit of the Higgins, and for no apparent benefit to 3GL, including but not limited to the following:

| Year | Recipient | Amount | Details (pleaded on information and belief) |
|---|---|---|---|
| 2015 | Bull Housser | $25,000 | This law firm represented Mr. Higgins individually in Canada in the AN Litigation |
| 2016 | Andrey Delchev & Partners | $4,394 | Mr. Delchev was Mr. Higgins' attorney in Bulgaria who represented him individually in the AN Litigation |
| 2016 | Bartko Zankel Bunzel | $11,593.36 | Unknown legal expense |
| 2018 | Graham Thompson | $100,000 | Law firm based in the Bahamas; Mr. Higgins has property and assets in Turks & Caicos |
| 2018 | Guillermo Delmonte | $10,000 | Mr. Delmonte is the COO of Ramm Pharma Corporation, a cannabis producer |
| 2019 | Fasken Martineau | $9,265 | Unknown legal expense |
| 2019 | Bado, Kuster, Zerbino & Rachetti | $5,472 | Attorneys in Uruguay |

18

| Year | Payee | Amount | Description |
|---|---|---|---|
| 2020 | Twa, Marcelin, Wolf | $220,000 | Law firm based in Turks & Caicos, where Mr. Higgins has property and assets |
| 2020 | Connected Spaces | $100,000 | Home Automation company, apparently paid for work on Mr. Higgins' and Mrs. Higgins' new mansion in British Columbia |
| 2020 | Air & Sea Agency | $24,247 | Directory of Tourism for Turks & Caicos, where Mr. Higgins has property and assets |
| 2020 | Purity Designs | $188,549 | Residential design, apparently used in connection with Mr. Higgins' or his daughter's residence |
| 2020 | Saxton 4x4 | $39,070 | United Kingdom's purveyor of exotic four wheel drive vehicles |
| 2020 | The Palms Resort | $123,457 | Resort in Turks & Caicos, where Mr. Higgins has property and assets |
| 2020 | Rollins Machinery | $44,889 | Machinery and equipment provider in British Columbia (3GL does not have production facilities or a large warehouse that would require the use of such machinery) |
| 2020 | Pent Sp. Zo. O. | $30,806 | Unrecognized business, possibly in Spain |
| 2020-2021 | Equity LTD | $163,838 | Financial services provider in Turks & Caicos, where Mr. Higgins has property and assets |
| 2021 | Logberg Corporate Services LTD | $1,650 | Construction services company in Turks & Caicos, where Mr. Higgins has property and assets |
| 2021 | Colorado Custom | $13,540 | Company that sells custom wheels for vehicles |
| 2022 | Kiva Construction | $7,830 | Construction business in Colorado Springs, Colorado |

**Total amount of transfers listed in this chart: $1,123,600.36**

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

56. Based on the above, the Higgins actively, deliberately and continuously commingled and diverted 3GL's revenues and cash assets to themselves and their Canadian companies, EHI and 3GI. Although 3GL would incur all or most of the expenses for developing, sourcing, manufacturing, bottling, shipping, marketing and sales of the fertilizer products, as well as paying the expenses for developing and registering the intellectual property associated with these products, the company revenues resulting from product sales were being diverted to the Higgins and their companies in Canada and through foreign bank accounts controlled by the Higgins beyond Mr. Pratt's reach or knowledge.

57. The Higgins concealed the above transactions from Plaintiff. Conspicuously, Mr. Pratt was never provided with a comprehensive accounting of 3GL's income and expenses, nor did he have access or visibility into 3GI's or EHI's accounts, or the overseas bank accounts controlled exclusively by the Higgins.

58. Only during his 2021 and 2022 review of 3GL's bank statements did Mr. Pratt discover that a number of transfers summarized above were transacted via the 3GL bank accounts by the Higgins using Mr. Pratt's electronic signature stamp without his knowledge or approval. As such, the Higgins were engaging in systematic transactions using Mr. Pratt's signature without his authority to enrich themselves to the detriment of 3GL and its members (including Mr. Pratt and the value of his 25% interest).

59. In 2022, Mr. Pratt directed in writing to the Higgins to immediately stop using his signature without his prior written approval. Upon their receipt of Mr. Pratt's request, the Higgins stopped issuing bi-monthly pay to Mr. Pratt.

60. However, the Higgins' diversion of 3GL assets was not limited to the above banking transactions.

61. Starting in and around 2015, Mr. Higgins was individually named as a defendant in multiple lawsuits filed in California, Canada and Bulgaria by his former employer, Advanced Nutrients Ltd., a Canadian corporation, and Advanced Nutrients

US LLC, a Washington limited liability company (collectively, "Advanced Nutrients"), stemming from his alleged theft of trade secrets and other materials owned by Advanced Nutrients Ltd. ("AN Litigation").  Mrs. Higgins was also named as a defendant.  As Plaintiff first discovered in late 2021, the Higgins used 3GL's assets to fund their personal defenses without reimbursement to the company.  Plaintiff is informed and believes, and thereon alleges, that the Higgins' defense cost hundreds of thousands of dollars.

62.     Plaintiff is further informed and believes, and thereon alleges, that in 2016, Mr. Higgins' company, EHI, filed a lawsuit against Mr. Bullock (the graphic designer contracted by 3GL to develop the artwork for 3GL's product labels) alleging his refusal to turn over the ownership rights to that artwork (the "Bullock Lawsuit").  Despite the fact that 3GL commissioned Mr. Bullock, paid Mr. Bullock, and used his artwork exclusively on 3GL's product labels (the "Artwork"), Mr. Higgins wrongfully asserted exclusive ownership rights to the Artwork.

63.     As Plaintiff first discovered in 2022, the Bullock Lawsuit was ultimately settled in or about June 2019, with the ownership rights to the Artwork purportedly transferred to EHI, including the following (all of which are used in tandem with 3GL's registered trademarks on its fertilizer product labels):

a. EMERALD HARVEST Logo Design artwork;
b. EMERALD & VINE Design artwork;
c. GROW Design artwork;
d. MICRO Design artwork;
e. BLOOM Design artwork;
f. CALI PRO GROW A Design artwork;
g. CALI PRO GROW B Design artwork;
h. CALI PRO BLOOM A Design artwork;
i. CALI PRO BLOOM B Design artwork;
j. CALI PRO Design artwork;
k. EMERALD GODDESS Design artwork;
l. HONEY CHROME Design artwork;
m. KING KOLA Design artwork;
n. ROOT WIZARD Design artwork; and
o. MARK'S MIX Design artwork.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

64. Plaintiff is informed and believes, and thereon alleges, that shortly prior to settlement of the Bullock Lawsuit, Mr. Higgins executed an assignment that purported to transfer his alleged individual ownership rights in the Artwork to EHI. However, there is no evidence establishing that Mr. Higgins had any individual ownership rights to the intellectual property he purportedly transferred and/or assigned to EHI. Rather, that intellectual property purportedly transferred to EHI is and has been owned by 3GL that commissioned and paid Mr. Bullock to create the unique Artwork for 3GL's products. Mr. Higgins' purported assignment of rights to EHI and his settlement of the Bullock Lawsuit violated 3GL's intellectual property rights and benefitted EHI and Mr. Higgins individually to the detriment of 3GL and its members. Indeed, Plaintiff is informed and believes, and thereon alleges, that there are no agreements between EHI and 3GL addressing the transfer, license, or assignment of intellectual property from 3GL to Mr. Higgins, Mrs. Higgins, EHI or 3GI.

65. Further, Plaintiff is informed and believes, and thereon alleges, that in 2017, and unknown to Mr. Pratt at the time, Mr. Higgins orchestrated a scheme whereby he shipped $139,439 worth of 3GL's products to HydroBleum, Inc., a company owned by Phil LaRochelle, Mr. Higgins' brother-in-law. As Plaintiff discovered in 2021, 3GL was never paid any compensation for that order, and Plaintiff presumes that the products received by HydroBleum were sold with all proceeds improperly retained by Mr. LaRochelle and/or Mr. Higgins. As such, 3GL and its members suffered direct harm by not receiving any payment for the shipped products.

66. The Higgins further diverted 3GL revenues received from international distributors to EHI. On or about April 7, 2020, Mrs. Higgins directed one of 3GL's largest distributors, Hawthorne USA, to remit all future payments for 3GL's fertilizer products purchased in Canada to EHI's bank account at the Royal Bank of Canada. This directive was issued to all international distributors. This diversion of 3GL's sales proceeds benefitted EHI and the Higgins individually to the detriment of 3GL and its members.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

67. Plaintiff is informed and believes, and thereon alleges, that the purpose behind the financial and intellectual property transfers summarized above was to, among others, diminish the value of 3GL and Mr. Pratt's 25% ownership interest in 3GL, avoid paying profit distributions to Mr. Pratt, and to unlawfully enrich Mr. Higgins, Mrs. Higgins, EHI and 3GI. Specifically, Plaintiff is informed and believes, and thereon alleges, that the Higgins diverted 3GL's assets to, in part, finance the construction of their newly built $15,000,000 mansion in British Columbia, Canada.

68. In addition to diverting 3GL's assets, Mr. Higgins took steps to frustrate 3GL's new product development and branding. In 2017, 3GL filed a trademark application to register the EMERALD EDGE mark – an application that was inexplicably abandoned in May 2021. Specifically, in or around late 2020, 3GL worked to develop the EMERALD EDGE brand of commercial hydroponic nutrient products. Plaintiff is informed and believes, and thereon alleges, that despite all the resources invested by 3GL into the development of the EMERALD EDGE brand, the Higgins "killed" the EMERALD EDGE brand because it was set up to be owned by 3GL and not EHI or 3GI. The Higgins then misappropriated the EMERALD EDGE concept by rebranding it with a new mark, NEXGEN. In April 2021 conversations between Mr. Pratt and Mr. Higgins, Mr. Higgins expressly stated that he owned all the brands of 3GL, including NEXGEN. In so doing, Mr. Higgins has improperly asserted ownership rights to 3GL's intellectual property and other assets (including formulas) to the detriment of 3GL and its members.

69. While still on medical leave in 2021, Mr. Pratt called Mr. Higgins to express concern about the Higgins' self-dealing and mismanagement of 3GL. In response, Mr. Higgins stated that Mr. Pratt had no ownership interest the Emerald Harvest brand (despite his 25% stake in 3GL), and further had no business inquiring about the Higgins' handling of financial and intellectual property assets of 3GL.

70. After raising complaints directly to Mr. Higgins, Mr. Pratt was subsequently locked out of 3GL. On or about April 7, 2022, Mr. Pratt's access to all

3GL computer systems was terminated, including email, Teams, SharePoint and others. Plaintiff is informed and believes, and thereon alleges, that 3GL employees were instructed to re-key the Santa Rosa facilities of 3GL and not allow Mr. Pratt onto the premises. As a result, Mr. Pratt was unable to remove all his personal items from 3GL's premises.

71. Mr. Pratt was thereafter informed by a 3GL employee that the warehouse manager and staff at the Santa Rosa facilities were instructed to call the police if he entered the premises, and that all locks and alarm codes were changed to prevent his access to 3GL's premises.

72. Plaintiff is informed and believes, and thereon alleges, that on or about April 21, 2022, the Higgins and/or their agent(s) unlawfully accessed Mr. Pratts' private and non-work-related Evernote internet account and gained access to some of Mr. Pratt's privileged communications with counsel, his personal diary, as well as Mr. Pratt's medical notes. Plaintiff is informed and believes, and thereon alleges, that this unlawful access was perpetrated when an account password reset email was sent to Mr. Pratt's work email address that was by then monitored by the Higgins and/or their agents, who changed the password on the account and caused Mr. Pratt to be permanently locked out of his Evernote account and unable to reset his password.

73. Several days after the Evernote breach, Mr. Pratt was contacted by two 3GL employees expressing concern that Mr. Higgins may have accessed Mr. Pratt's private journals based on questions and statements he made concerning Mr. Pratt's private life.

74. Mr. Pratt also discovered another troubling revelation. After initially refusing to do so, Mrs. Higgins ultimately provided a copy of the 2020 3GL Form 1065 K-1 to Mr. Pratt (under threat of litigation). That form revealed that Mr. Pratt apparently bears responsibility for 25% of 3GL's recourse liabilities for 2020 in the amount of $1,435,360 (i.e., 25% of 3GL's total liabilities of $5,741,440). Mr. Pratt has no knowledge of personally guaranteeing any debts of 3GL, and he was never

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

informed that such personal guarantees were given by Mr. Higgins and/or Mrs. Higgins. As such, the Higgins intentionally concealed from Plaintiff the existence and nature of the recourse liabilities, why and how they were incurred and for what business purpose, and the basis for his assumption of 25% of such liabilities. In so doing, the Higgins, acting on behalf of 3GL, have wrongfully created liabilities for Plaintiff without his knowledge or consent.

75. To date, Mr. Pratt also received no profit distributions from 3GL despite the fact that he dedicated 7 years of his life to the venture and advanced approximately $675,000 of personal funds for 3GL's use. While Mr. Pratt finally started receiving regular compensation in 2019 – after 5 years of work with little or no compensation – his capital advances have not been repaid given the wrongful conduct of the Higgins in diverting 3GL's assets to themselves and their Canadian companies. Moreover, as described above, Mr. Pratt's compensation was terminated after he instructed the Higgins to stop using his electronic signature on banking transactions.

### 3GL's Damages

76. Plaintiff is informed and believes, and thereon alleges, that the actions and omissions of Mr. Higgins, Mrs. Higgins, EHI and 3GI (collectively "Primary Defendants") have caused actual damages to 3GL and its members in the amount that exceeds $10,000,000, including but not limited to misappropriated and diverted corporate profits, intellectual property and business opportunities.

77. In addition, the Primary Defendants have also severely damaged the value of 3GL as a going concern due to, including but not limited to, the following:

    a. 3GL's profits are unreliable and depressed due to years of mismanagement and self-dealing;

    b. 3GL's books and records are not trustworthy;

    c. 3GL's rights to its intellectual property and the Artwork are in question due to illegal transfers of same to EHI;

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

       d.  Damage to 3GL's Emerald Harvest and other brands caused by the Primary Defendants' conduct; and

       e.  Damage to 3GL's reputation caused by the Primary Defendants' conduct.

78.    Plaintiff conservatively estimates that acts and omissions of the Primary Defendants have reduced the value of 3GL as a going concern by at least $25,000,000.

### Mr. Pratt's Damages

79.    Separate and apart from the damages suffered by 3GL, Mr. Pratt suffered additional damages, both individually and as a member of 3GL.  Mr. Pratt has lost significant value associated with his ownership stake in 3GL due to the Primary Defendants' diversion of assets as detailed above.  Further, he has not been repaid all the owner contributions he has made since 2014 for the benefit of 3GL.  Mr. Pratt has further been deprived of unknown amounts of otherwise distributable profits that were instead diverted to Mr. Higgins and Mrs. Higgins directly, or to companies they controlled.  Mr. Pratt suffered additional damages as a consequence of hacking of his Evernote account by the Higgins and/or their agents.  The actions and omissions of the Primary Defendants have caused actual damages to Mr. Pratt in an unknown amount to be proven at trial.

### Plaintiff Seeks Recovery of Attorney's Fees and Costs

80.    Plaintiff will seek the creation of a common fund for the benefit of 3GL and its members.  The amount awarded as damages on derivative claims against Mr. Higgins, Mrs. Higgins, 3GI and EHI is to be deposited into this common fund.

81.    Once the common fund is established and funded, Plaintiff will seek an order of this Court reimbursing his reasonable attorney's fees and costs incurred in connection with the derivative claims pursued in this litigation out of the common fund, as allowed in derivative actions where Plaintiff must expend his own funds to pursue an action for the benefit of all members and the limited liability company.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

82. Plaintiff additionally seeks attorneys' fees and costs on his individual causes of action against the Primary Defendants, as pleaded herein.

## **FIRST CAUSE OF ACTION**

**(Breach of Fiduciary Duty; Asserted by Plaintiff individually, and derivatively on behalf of 3GL, against Mr. Higgins and Mrs. Higgins)**

83. Plaintiff repeats the allegations in Paragraphs 1 through 82 of this Complaint, inclusive, as if fully set forth herein.

84. Mr. Higgins owed fiduciary duties to 3GL and its members, including Plaintiff, by virtue of serving as officer and manager of 3GL, including but not limited to a duty of loyalty under Corp. Code § 17704.09(b) and Corp. Code § 17704.09(f)(1), and a duty of care in the conduct of the activities of the limited liability company under Corp. Code § 17704.09(c) and Corp. Code § 17704.09(f)(1). As the majority owner of 3GL, Mr. Higgins also owed fiduciary duties to Mr. Pratt as a minority owner.

85. Mrs. Higgins owed fiduciary duties to 3GL and its members, including Plaintiff, by virtue of serving first as Chief Operating Officer and then as President, as well as a manager of 3GL and a fiduciary in fact. Mrs. Higgins also owed fiduciary duties to Plaintiff as a minority owner, as Mrs. Higgins acted in conspiracy with and in concert with Mr. Higgins as part of a controlling majority owner group in 3GL.

86. As controlling owners in 3GL, Mr. Higgins and Mrs. Higgins owed fiduciary duties to the minority owner, Plaintiff. Majority owners may not use their power to control company activities to benefit themselves alone, or in manner that is detrimental to minority owners.

87. As fiduciaries, Mr. Higgins and Mrs. Higgins were required to act with utmost good faith and for the benefit of 3GL and its members, including Plaintiff, and owed a duty of undivided loyalty.

88. Mr. Higgins and Mrs. Higgins breached their fiduciary duties to 3GL and Mr. Pratt through the acts described above, and have acted for their own benefit and against the interests of 3GL and the minority owners of 3GL, including by: (1) false,

fraudulent and deceptive alteration and writing of checks drawn on 3GL's business accounts; (2) making false, fraudulent, and deceptive entries in the books and records of 3GL; (3) secretly, fraudulently and deceptively asserting ownership rights over 3GL's intellectual property; (4) self-dealing and diverting business opportunities and financial resources away from 3GL and for their own personal gain; (5) failing to use reasonable care in management of 3GL; (6) withholding profit distributions, guaranteed pay and repayment of owner contributions from Mr. Pratt as a member of 3GL, while falsely representing to Plaintiff that 3GL was not making enough money to make those payments, distributions and reimbursements; (7) assuming recourse liabilities on behalf of 3GL's members without consent of all members; (8) severely damaging the value of 3GL as a going concern through acts of mismanagement and fraud; and (9) other misconduct described above.

89. Neither Plaintiff nor 3GL gave informed consent to Mr. Higgins' and Mrs. Higgins' wrongful conduct described above.

90. Plaintiff timely exercised due diligence to discover the true state of financial and business affairs of 3GL upon Plaintiff's discovery of facts sufficient to put Plaintiff on notice that wrongful conduct was afoot. At every step, Mr. Higgins and Mrs. Higgins stonewalled these efforts so as to hide the true facts from Plaintiff, and thus Plaintiff was prevented from discovering these facts until 2022.

91. As a direct and proximate result of Mr. Higgins' and Mrs. Higgins' breaches of their fiduciary duties, Plaintiff and 3GL were harmed in the amount of at least $35,000,000, subject to proof at trial and, unless stopped by this Court, Mr. Higgins and Mrs. Higgins have been and will continue to be unjustly enriched.

92. In committing the wrongful acts described herein, Mr. Higgins and Mrs. Higgins acted with oppression, fraud and malice, justifying recovery of exemplary damages.

93. Wherefore, Plaintiff prays for relief as set forth below.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

## <u>SECOND CAUSE OF ACTION</u>

**(Breach of Duty of Good Faith and Fair Dealing; Asserted by Plaintiff individually, and derivatively on behalf of 3GL, against Mr. Higgins and Mrs. Higgins)**

94. Plaintiff repeats the allegations in Paragraphs 1 through 93 of this Complaint, inclusive, as if fully set forth herein.

95. As members of 3GL, Mr. Higgins and Mrs. Higgins both had a duty of good faith and fair dealing to 3GL and its members, including Plaintiff. (Corp. Code §§ 17704.09(d) and (f)(2)).

96. Based on these relationships, 3GL and Plaintiff trusted Mr. Higgins and Mrs. Higgins to act in good faith and deal fairly in matters related to the interests of 3GL and its members, including Plaintiff.

97. Mr. Higgins and Mrs. Higgins breached their duties of good faith and fair dealing to 3GL and Mr. Pratt as its member through the misconduct described above.

98. Neither Plaintiff nor 3GL gave informed consent to Mr. Higgins' and Mrs. Higgins' wrongful conduct described above.

99. Plaintiff timely exercised due diligence to discover the true state of financial and business affairs of 3GL upon Plaintiff's discovery of facts sufficient to put Plaintiff on notice that wrongful conduct was afoot. At every step, Mr. Higgins and Mrs. Higgins stonewalled these efforts so as to hide the true facts from the Plaintiff, and thus Plaintiff was prevented from discovering these facts until 2022.

100. As a direct and proximate result of Mr. Higgins' and Mrs. Higgins' breaches of their fiduciary duties Plaintiff and 3GL were harmed in the amount of at least $35,000,000, subject to proof at trial and, unless stopped by this Court, Mr. Higgins and Mrs. Higgins have been and will continue to be unjustly enriched.

101. In committing the wrongful acts described herein, Mr. Higgins and Mrs. Higgins acted with oppression, fraud and malice, justifying recovery of exemplary damages jointly against Mr. Higgins and Mrs. Higgins.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

102. Wherefore, Plaintiff prays for relief as set forth below.

### **THIRD CAUSE OF ACTION**

**(Receiving Improper Distributions (Corp. Code §§ 17704.05 & 17704.06);**

**Asserted derivatively on behalf of 3GL against all Primary Defendants)**

103. Plaintiff repeats the allegations in Paragraphs 1 through 102 of this Complaint, inclusive, as if fully set forth herein.

104. Mr. Higgins and Mrs. Higgins owed a duty under Corp. Code § 17704.05 to not make or receive distributions of 3GL's profits that would render 3GL, as a result of making these distributions, unable to pay its debts as they become due in the ordinary course of its activities, or 3GL's total assets, as a result of making the distribution, would be less than the sum of its total liabilities plus the amount that would be needed to satisfy preferential rights on dissolution.

105. Plaintiff is informed and believes, and thereon alleges, that Mr. Higgins and Mrs. Higgins received distributions of 3GL's profits by issuing checks to themselves, EHI, 3GI and third parties, as alleged above, knowing that these profit distributions were made in violation of Corp. Code § 17704.5.

106. Plaintiff is informed and believes, and thereon alleges, that the improper profit distributions received by Mr. Higgins and Mrs. Higgins caused 3GL to be unable to pay its debts as they became due in the ordinary course of its activities, or 3GL's total assets, as a result of making the distribution, became less than the sum of its total liabilities plus the amount that would be needed to satisfy preferential rights on dissolution.

107. As a result of the improper distributions alleged in this Complaint, Mr. Higgins and Mrs. Higgins are personally liable to 3GL under Corp. Code § 17704.06 to the extent that the distributions made or received by Mr. Higgins and Mrs. Higgins exceeded the amount that could have been properly paid under Corp. Code Section 17704.05, plus interest thereon at the legal rate on judgments.

108. On information and belief, all Primary Defendants are liable for this claim as alter egos of, or as co-conspirators with, Mr. Higgins and Mrs. Higgins.

109. Wherefore, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment and Restitution; Asserted derivatively on behalf of 3GL against all Primary Defendants)

110. Plaintiff repeats the allegations in Paragraphs 1 through 109 of this Complaint, inclusive, as if fully set forth herein.

111. Plaintiff is informed and believes, and thereon alleges, that each of the Primary Defendants, including Mr. Higgins, Mrs. Higgins, EHI and 3GI, was unjustly enriched by unlawfully misappropriating 3GL's resources and business opportunities for the Primary Defendants' gain and benefit without in return providing goods, services, or opportunities of comparable value to 3GL.

112. Plaintiff is informed and believes, and thereon alleges, that each of the Primary Defendants received fraudulent transfers of 3GL's funds and intellectual property for their own gain and benefit without in return providing goods or services of comparable value to 3GL.

113. Plaintiff is informed and believes, and thereon alleges, that Mr. Higgins and Mrs. Higgins made fraudulent transfers of 3GL's funds and intellectual property to EHI, 3GI and third parties for their own gain and benefit without the Primary Defendants or said third parties providing in return to 3GL goods or services of comparable value.

114. On information and belief, all Primary Defendants are liable for this claim as alter egos, or as co-conspirators.

115. As a direct and proximate result of the Primary Defendants' misconduct, 3GL was harmed and the Primary Defendants were unjustly enriched.

116. Plaintiff alleges that the Primary Defendants are liable for restitution. Restitution under these circumstances includes not only the restoration or giving back of

all improper transfers made, but also compensation, reimbursement, indemnification, and reparation for benefits derived from, or for loss or injury caused to, 3GL as a consequence of these transfers.

117. Wherefore, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION

**(Conversion; Asserted derivatively on behalf of 3GL against all Primary Defendants)**

118. Plaintiff repeats the allegations in Paragraphs 1 through 117 of this Complaint, inclusive, as if fully set forth herein.

119. As set forth above, 3GL owned, possessed, and/or had a right to possess personal property belonging to 3GL and its members, including Mr. Pratt, including but not limited to specifically-identifiable sums of money, as well as intellectual property and other company resources.

120. The Primary Defendants, and each of them, through the misconduct described above, substantially interfered with the property of 3GL and its members by knowingly and intentionally misappropriating and converting it to their own use and possession, without 3GL's and Mr. Pratt's knowledge or consent.

121. On information and belief, all Primary Defendants are liable for this claim as alter egos, or as co-conspirators.

122. As a direct and proximate result of the Primary Defendants' misconduct, 3GL has been harmed in an amount subject to proof at trial.

123. In committing the wrongful acts described herein, the Primary Defendants acted with oppression, fraud and malice, justifying recovery of exemplary damages.

124. Wherefore, Plaintiff prays for relief as set forth below.

### SIXTH CAUSE OF ACTION

**(Concealment; Asserted derivatively on behalf of 3GL against all Primary Defendants)**

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

125. Plaintiff repeats the allegations in Paragraphs 1 through 124 of this Complaint, inclusive, as if fully set forth herein.

126. As fiduciaries, Mr. Higgins and Mrs. Higgins had a duty to disclose fully to 3GL and its members, including Plaintiff, all material facts concerning the transactions they undertook on behalf of 3GL which might affect Plaintiff's decisions.

127. In their communications with 3GL and Mr. Pratt, Mr. Higgins and Mrs. Higgins repeatedly blamed the business conditions and Mr. Pratt's alleged failure to follow "established protocols" on lackluster profits and absence of profit distributions to 3GL's members, along with a host of other manufactured reasons.

128. Mr. Higgins and Mrs. Higgins knew that they were using their control over 3GL's business activities, financial affairs and bookkeeping to benefit themselves to the detriment of 3GL and Mr. Pratt, and knew that they were not managing 3GL's business in full compliance with the law and with the best interests of its members in mind.

129. Moreover, the Higgins concealed their creation of 3GL corporate recourse liabilities totaling $5,741,440 as of 2020, for 25% of which they claim Plaintiff bears responsibility. The Higgins intentionally concealed from 3GL and Plaintiff the existence and nature of the recourse liabilities and why and how they were incurred and for what business purpose.

130. Mr. Higgins and Mrs. Higgins intentionally failed to share all information that was material to the interests of 3GL and Mr. Pratt, including their true conduct with respect to 3GL's business activities, financial affairs, bookkeeping, and purported creation of corporate liabilities. Mr. Higgins and Mrs. Higgins therefore engaged in fraudulent concealment. Because Mr. Pratt trusted Mr. Higgins and Mrs. Higgins to faithfully execute their fiduciary obligations, and since Mr. Higgins and Mrs. Higgins kept the corporate books and records of 3GL, as well as all foreign bank accounts, outside of Plaintiff's reach, Plaintiff was not aware of the true material facts and motivations guiding Mr. Higgins and Mrs. Higgins.

131. 3GL and Plaintiff reasonably relied on Mr. Higgins and Mrs. Higgins to act in the best interests of 3GL and Plaintiff by, among other things, permitting Mr. Higgins and Mrs. Higgins to continue managing 3GL's financial affairs and maintaining the corporate book and records of 3GL. If 3GL and Plaintiff had known the true facts about Mr. Higgins' and Mrs. Higgins' conduct, they would have taken protective measures to prevent Mr. Higgins and Mrs. Higgins from continuing to manage 3GL's financial affairs and maintain the corporate books and records of 3GL. Moreover, the actions of Mr. Higgins and Mrs. Higgins have substantially diminished the value of 3GL and of Plaintiff's ownership interest therein.

132. On information and belief, all Primary Defendants are liable for this claim as alter egos of, or as co-conspirators with, Mr. Higgins and Mrs. Higgins.

133. As a direct and proximate result of the concealment, 3GL and its members, including Plaintiff, suffered damages in an amount according to proof at trial.

134. In committing the wrongful acts described herein, the Primary Defendants acted with oppression, fraud and malice, justifying recovery of exemplary damages.

135. Wherefore, Plaintiff prays for relief as set forth below.

### SEVENTH CAUSE OF ACTION

**(Accounting and Restitution; asserted by Plaintiff individually, and derivatively on behalf of 3GL, against all Primary Defendants)**

136. Plaintiff repeats the allegations in Paragraphs 1 through 135 of this Complaint, inclusive, as if fully set forth herein.

137. Mr. Pratt is the holder of record of 25% membership interest in 3GL. Mr. Higgins is the holder of record of 51% membership interest in 3GL. Mrs. Higgins is the holder of record of 24% membership interest in 3GL.

138. Mr. Higgins and Mrs. Higgins at all times relevant herein have been in total and complete control of 3GL, 3GI, EHI and 3GP.

139. Plaintiff requests the Court to order an accounting of 3GL's affairs within the limits of the applicable statutes of limitation, that the account be settled between

3GL and the Primary Defendants, and that Plaintiff have judgment for restitution against the Primary Defendants for whatever sums may be found owing to 3GL and its members under the accounting.

140. Wherefore, Plaintiffs pray for relief as set forth below.

## EIGHTH CAUSE OF ACTION

### (Dissociation; Asserted derivatively on behalf of 3GL against Mr. Higgins and Mrs. Higgins)

141. Plaintiff repeats the allegations in Paragraphs 1 through 140 of this Complaint, inclusive, as if fully set forth herein.

142. At all times relevant, Mr. Higgins and Mrs. Higgins were holders of membership interests in 3GL.

143. Under California Corporations Code section 17706.02, on application by a limited liability company, a person may be expelled as a member by judicial order because the person has: (1) engaged in wrongful conduct that has adversely and materially affected, or will adversely and materially affect, the limited liability company's activities; (2) willfully or persistently committed, or is willfully and persistently committing, a material breach of the operating agreement or the person's fiduciary duties or obligations under section 17704.09; or (3) engaged in conduct relating to the limited liability company's activities that makes it not reasonably practicable to carry on the activities with the person as a member.

144. Mr. Higgins and Mrs. Higgins should be expelled as members from 3GL because, as set forth above, they have engaged in wrongful conduct that has adversely and materially affected the business activities of 3GL, have willfully or persistently committed a material breach of their duties or obligations under Corporations Code section 17704.09, and/or have engaged in conduct that makes continued operation of 3GL impractical with Mr. Higgins and Mrs. Higgins as members.

145. This wrongful conduct by Mr. Higgins and Mrs. Higgins has adversely and materially affected 3GL's activities. As a result, Plaintiff seeks, derivatively on

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

behalf of 3GL, a judicial order of expulsion of Mr. Higgins and Mrs. Higgins as managers and members of 3GL and prays for relief as set forth below.

### <u>NINTH CAUSE OF ACTION</u>

**(Appointment of Receiver; Asserted by Plaintiff individually, and derivatively on behalf of 3GL, against all Primary Defendants)**

146. Plaintiff repeats the allegations in Paragraphs 1 through 145 of this Complaint, inclusive, as if fully set forth herein.

147. Plaintiff is a holder of 25% membership interest in 3GL, however he is excluded from most critical financial and business decisions and unable to act to preserve the viability of 3GL.

148. Since at least 2015, Mr. Higgins and Mrs. Higgins have been in complete control of 3GL's revenues, property and business assets. Mr. Higgins and Mrs. Higgins remain in complete control of 3GL today, as Mr. Pratt has been effectively excluded from participating in the management of 3GL, its decision-making, and the sharing in the profits of the business.

149. All alleged above, Mr. Higgins and Mrs. Higgins were, and still are, using 3GL, including its personnel, facilities, intellectual property and revenue, for their own benefit and the benefit of EHI and 3GI.

150. Mr. Higgins and Mrs. Higgins have already fraudulently transferred millions of dollars from 3GL's operating accounts into personal bank accounts, including tax havens and in Canada, outside of the reach of 3GL and Mr. Pratt. Their conduct is not expected to change and it caused, and continues to cause, material damages to 3GL and its members.

151. There is significant danger that 3GL's financial and property assets will be entirely dissipated and removed by Mr. Higgins and Mrs. Higgins, possibly in anticipation of having to pay damages as a consequence of this lawsuit.

152. Plaintiff respectfully requests the Court appoint and instruct a receiver to: (1) take possession of 3GL, all other assets, books and records of 3GL; (2) manage 3GL

and conduct its business in a lawful and reasonable manner; (3) conduct a forensic accounting of the profits and losses of 3GL within the applicable statutes of limitation; and (4) pursue action to recover all improper transfers of assets from 3GL to the Primary Defendants and third parties within the applicable statutes of limitation.

153. Plaintiff is informed and believes, and thereon alleges, that unless a receiver is appointed and instructed as requested above, 3GL will be materially and irreparably damaged. In addition, the parties hereto may be subjected to serious personal liability to third parties for any injury or damage sustained by them as a result of business transactions unlawfully conducted by the Primary Defendants in the name of 3GL.

154. Wherefore, Plaintiff prays for relief as set forth below.

## **TENTH CAUSE OF ACTION**

**(Violation of California Bus. & Prof. Code §§ 17200, *et seq.*; Asserted by Plaintiff individually, and derivatively on behalf of 3GL, against all Primary Defendants)**

155. Plaintiff repeats the allegations in Paragraphs 1 through 154 of this Complaint, inclusive, as if fully set forth herein.

156. The Primary Defendants' conduct, as set forth herein, violates the rights of Plaintiff and 3GL and constitutes unlawful, unfair and/or fraudulent business acts or practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

157. As a direct and proximate result of the Primary Defendants' conduct, the Primary Defendants have caused damages to Plaintiff and 3GL.

158. Further, as a direct and proximate result of the Primary Defendants' conduct, the Primary Defendants have been unjustly enriched in amounts for which Plaintiff and 3GL are entitled to restitution.

159. On information and belief, all Primary Defendants are liable for this claim as alter egos, or as co-conspirators.

160. Wherefore, Plaintiffs pray for relief as set forth below.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

## **ELEVENTH CAUSE OF ACTION**

## **(Fraudulent Concealment; Asserted by Plaintiff individually against all Primary Defendants)**

161.    Plaintiff repeats the allegations in Paragraphs 1 through 160 of this Complaint, inclusive, as if fully set forth herein.

162.    At the time Mr. Higgins and Mrs. Higgins approached Plaintiff and requested he invest with them to form and purchase a membership interest in 3GL, and again at the time during which Plaintiff poured his time and energy into working to build 3GL's business, the Higgins intentionally failed to disclose material facts that were known only to them and that Plaintiff could not have discovered and which, if they had been disclosed, would have caused Plaintiff to avoid the transaction.

163.    For example, Mr. Higgins and Mrs. Higgins failed to disclose their true intent to take advantage of Plaintiff to control 3GL for their own benefit and for the benefit of others, to the detriment of Plaintiff, and failed to disclose that they were engaging in such activities once 3GL was formed.

164.    As another example, Mr. Higgins and Mrs. Higgins stated that 3GL would own all the intellectual property rights created in connection with the business, and failed to disclose their true intent to divert the business opportunities, intellectual property and other business resources away from 3GL and for their own benefit and the benefit of others, to the detriment of Plaintiff, and failed to disclose that they were engaging in such activities once 3GL was formed.

165.    Moreover, the Higgins concealed their creation of 3GL corporate recourse liabilities totaling $5,741,440 as of 2020, for 25% of which they claim Plaintiff bears responsibility.  The Higgins intentionally concealed from 3GL and Plaintiff the existence and nature of the recourse liabilities, why and how they were incurred and for what business purpose, and the basis for Plaintiff's assumption of 25% of such liabilities.

166. Mr. Higgins and Mrs. Higgins had a duty to disclose this material information because, among other things, they were fiduciaries of Plaintiff and/or because they disclosed some facts to Plaintiff but intentionally failed to disclose other facts, making their partial disclosure deceptive. Moreover, the true facts were known only to Mr. Higgins and Mrs. Higgins, and this information could not have been reasonably discovered by Plaintiff. Moreover, Mr. Higgins and Mrs. Higgins acted to prevent Plaintiff from discovering the true facts.

167. Plaintiff did not know of these fraudulently concealed facts, and Mr. Higgins and Mrs. Higgins intended to deceive Plaintiff by concealing them.

168. Had this omitted information been disclosed, Plaintiff would have behaved differently including, for example, by not investing in and obtaining a member interest in 3GL, and similarly by not continuing to spend his time working to build the business of 3GL while the benefits of Plaintiff's efforts were, unbeknownst to Plaintiff, being diverted for the personal benefit of Mr. Higgins and Mrs. Higgins.

169. Due to the deceptive practices of Mr. Higgins and Mrs. Higgins, these fraudulent omissions were not discovered until 2022, when Plaintiff began to unravel their web of deceit.

170. Plaintiff was harmed by this concealment in multiple ways: as often occurs when fiduciaries betray the trust placed in them over a long period of time based on a series of material omissions and deceptions, Plaintiff parted with things of value, including funds to invest in 3GL.

171. On information and belief, all Primary Defendants are liable for this claim as alter egos of, or as co-conspirators with, Mr. Higgins and Mrs. Higgins.

172. In committing the wrongful acts described herein, the Primary Defendants acted with oppression, fraud and malice, justifying recovery of exemplary damages.

173. Wherefore, Plaintiff prays for relief as set forth below.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

## **TWELFTH CAUSE OF ACTION**

**(Civil Remedies for Theft and/or Receipt of Stolen Property (Penal Code § 496); Asserted by Plaintiff individually, and derivatively on behalf of 3GL, against all Primary Defendants)**

174. Plaintiff repeats the allegations in Paragraphs 1 through 173 of this Complaint, inclusive, as if fully set forth herein.

175. Penal Code section 496, subdivision (a) provides, in part: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year . . . ."

176. Penal Code section 496, subdivision (c) further provides: "Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." The treble damages set forth in this statute apply in civil cases and a criminal conviction is not a prerequisite to recovery.

177. As alleged above, the Primary Defendants have committed theft by false pretenses, conversion and fraud, and are in receipt of Plaintiff's and 3GL's stolen property.

178. By engaging in this conduct, the Primary Defendants substantially interfered with Plaintiff's and 3GL's right to the return of their property by knowingly and intentionally refusing to return it to them in violation of Penal Code section 496.

179. On information and belief, all Primary Defendants are liable for this claim as alter egos, or as co-conspirators.

180. As a direct and proximate result of the Primary Defendants' conduct, the Primary Defendants have caused damages to Plaintiff and 3GL.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

181. Pursuant to Penal Code section 496, subdivision (c), Plaintiff and 3GL are entitled to treble damages in the amount of three times their actual damages, and reasonable attorneys' fees and costs.

182. Wherefore, Plaintiff prays for relief as set forth below.

<u>**THIRTEENTH CAUSE OF ACTION**</u>

**(Violation of the California Computer Data Access and Fraud Act (Penal Code § 502); Asserted by Plaintiff individually against all Primary Defendants)**

183. Plaintiff repeats the allegations in Paragraphs 1 through 182 of this Complaint, inclusive, as if fully set forth herein.

184. The computers and servers referred to herein are subject to section 502 of the California Penal Code.

185. Mr. Higgins' and/or Mrs. Higgins' conduct violates section 502 of the California Penal Code (the California Computer Data Access and Fraud Act), including but not limited to section 502(c)(5) of the California Penal Code, which makes it unlawful to knowingly and without permission disrupt, or cause the disruption, of computer services or deny, or cause the denial, of computer services to an authorized user of a computer, computer system, or computer network.

186. On information and belief, all Primary Defendants are liable for this claim as alter egos, or as co-conspirators.

187. As a direct and proximate result of the violation of section 502 of the California Penal Code, Mr. Higgins and/or Mrs. Higgins have caused Plaintiff damages in a sum to be determined at trial according to proof. With regard to such violation, Plaintiff is additionally entitled to injunctive and other equitable relief.

188. This conduct was willful and manifests oppression, fraud and malice. As a result, Plaintiff is entitled to exemplary damages pursuant to section 502(e)(4) of the California Penal Code and section 3294 of the California Civil Code.

189. Wherefore, Plaintiff prays for relief as set forth below.

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.

## FOURTEENTH CAUSE OF ACTION

### (Aiding and Abetting; Asserted by Plaintiff individually, and derivatively on behalf of 3GL, against all Primary Defendants)

190. Plaintiff repeats the allegations in Paragraphs 1 through 189 of this Complaint, inclusive, as if fully set forth herein.

191. Each of the Primary Defendants knew that the wrongs set forth above were going to be committed against Plaintiff and 3GL.

192. To the extent any Primary Defendant did not itself commit any of these wrongs, the Primary Defendants gave substantial assistance or encouragement in furtherance of the commission of the wrongs, and intended to facilitate the wrongful conduct.

193. The Primary Defendants' conduct was a substantial factor in causing harm to Plaintiff and 3GL.

194. In committing the wrongful acts described herein, the Primary Defendants acted with oppression, fraud and malice, justifying recovery of exemplary damages.

195. Wherefore, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

Plaintiff is entitled to, and requests damages and other relief for his individual benefit, and the benefit of 3GL and its members, by way of judgment as follows:

1. For actual damages in an amount to be proved at trial;

2. For consequential damages in an amount to be proved at trial;

3. For exemplary and punitive damages in an amount appropriate to punish the Primary Defendants and set an example for others;

4. For compensatory, incidental, and consequential damages according to proof, trebled pursuant to Penal Code section 496(c);

5. For restitution to 3GL and its members of any money and property according to proof;

6. For an accounting of 3GL's affairs within the limits of the applicable statutes of limitation and that the account be settled between 3GL, Mr. Higgins, Mrs. Higgins, EHI and 3GI;

7. For judgment for restitution against Mr. Higgins, Mrs. Higgins, 3HI and 3GI for whatever sums may be found owing to 3GL and its members under the accounting;

8. For involuntary expulsion of Mr. Higgins and Mrs. Higgins as co-managers and members of 3GL;

9. That the Court decree a receiver be appointed to: (1) take possession of 3GL, all other assets, books and records of 3GL; (2) manage 3GL and conduct its business in a lawful and reasonable manner; (3) conduct a forensic accounting of the profits and losses of 3GL within the applicable statutes of limitation; and (4) pursue action to recover all improper transfers of assets from 3GL to the Primary Defendants and third parties within the applicable statutes of limitation;

10. For costs of suit herein incurred, including reasonable attorney's fees;

11. For pre- and post-judgment interest;

12. For equitable and injunctive relief as appropriate;

13. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff David Pratt hereby demands trial by jury in this action.

ANDERSON ZEIGLER
A Professional Corporation

Date: August 24, 2022      By *Michael Shklovsky*
                                     Michael Shklovsky
                                     Attorneys for Plaintiff

FIRST AMENDED COMPLAINT AGAINST ROBERT C. HIGGINS, ET AL.