United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PRATT,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT C. HIGGINS, et al.,<br><br>　　　　　　Defendants. | Case No.  22-cv-04228-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

　　　　Pending before the Court is a motion filed by Defendants Robert Higgins ("Mr. Higgins"), Sharon Higgins ("Mrs. Higgins"), Green Garden Group, Inc. ("3GI"), and Emerald Harvest, Inc. ("EHI") seeking to dismiss certain causes of action alleged in Plaintiff's First Amended Complaint.  *See* Dkt. No. 22 ("Mot."); *see also* Dkt. No. 16 ("FAC").  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I.　BACKGROUND

　　　　Plaintiff brings the following long list of claims: (1) breach of fiduciary duty; (2) breach of duty of good faith and fair dealing; (3) receiving improper distributions; (4) unjust enrichment and restitution; (5) conversion; (6) concealment; (7) accounting and restitution; (8) dissociation; (9) appointment of receiver; (10) violations of California's Unfair Competition Law; (11) fraudulent concealment; (12) civil remedies for theft and/or receipt of stolen property; (13) violations of the California Computer Data Access and Fraud Act; and (14) aiding and abetting.  FAC ¶¶ 83–195.

　　　　The FAC alleges that Plaintiff David Pratt ("Plaintiff" or "Pratt") entered into a verbal agreement with Mr. Higgins on January 27, 2014 to form Nominal Defendant 3G Green Garden Group, LLC ("3GL") to develop and own fertilizer products.  FAC ¶¶ 19, 20.  Mr. Higgins is the co-founder and CEO of 3GL, maintaining 51% equity in the company, Pratt owned 25%, and Mrs.

1  Higgins owned 24% equity (allegedly without Plaintiff's knowledge).  FAC ¶¶19(c), 19(d), 19(f),

2  28.  3GL's principal place of business is in Santa Rosa, California.  FAC ¶ 6.  In 2014, Mr.

3  Higgins also formed defendant Emerald Harvest, Inc. ("EHI"), and in 2017 formed Green Garden

4  Group, Inc. ("3GI").  FAC ¶ 22, 47.  Pratt alleges that Mr. Higgins, along with his wife Mrs.

5  Higgins, "assumed total control over the affairs of 3GL and hid its financial and business

6  information from Pratt."  Dkt. No. 29 ("Opp.") at 1; FAC ¶¶ 33-68.  In essence, Plaintiff alleges

7  that Mr. Higgins created and used the defendant entities to wrongfully divert assets and funds

8  away from 3GL to the Defendants and third parties for his and his wife's personal gain.  Opp. at 1.

9  Specifically, Plaintiff alleges a series of purportedly improper transfers of assets and IP.  FAC ¶¶

10  51-56, 67-68.

11  　　　Plaintiff filed his complaint in state court on June 15, 2022.  *See* Dkt. No. 1-1.  The case

12  was removed on July 20, 2022, *see* Dkt. No. 1, and Defendants now move to dismiss.

13  **II.   MOTION TO DISMISS: PERSONAL JURISDICTION**

14  　　　**A.   Legal Standard**

15  　　　"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

16  over persons" and entities.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  California law

17  authorizes jurisdiction to the full extent permitted by the U.S. Constitution.  Cal. Civ. Proc. Code §

18  410.10.  In determining whether the Court has personal jurisdiction satisfying the requirements of

19  due process, the Court must ascertain whether the defendant has "certain minimum contacts" with

20  California "such that the maintenance of the suit does not offend traditional notions of fair play

21  and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and

22  quotations omitted).  In conducting its inquiry, the Court must determine whether the contacts

23  with the forum state confer specific or general jurisdiction.  *Daimler*, 571 U.S. at 118.

24  　　　**B.   Analysis**

25  　　　Because Defendants concede personal jurisdiction as to the Higginses, the Court need only

26  assess whether personal jurisdiction exists over EHI and 3GI (the "Canadian Entities").  Plaintiff

27  raises two independent theories of personal jurisdiction: direct specific jurisdiction and jurisdiction

28  imputed from Mr. Higgins via the alter-ego doctrine.  *See* Opp. at 3.  Plaintiff fails to establish

United States District Court
Northern District of California

2

personal jurisdiction over the Canadian Entities under either theory.

### i.   Specific Jurisdiction

"Specific jurisdiction exists when a case arises out of or relate[s] to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "When a defendant's motion to dismiss on jurisdictional grounds rests only on written materials rather than on testimony at an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Herbal Brands, Inc. v. Photoplaza, Inc.*, No. 21-17001, 2023 WL 4341454, at *3 (9th Cir. July 5, 2023) (citation and quotations omitted).  The Ninth Circuit instructs district courts to assess specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff bears the burden of satisfying the first two elements.  *Id.*  At the dismissal stage, the plaintiff need only make a prima facie showing of jurisdictional facts that, if true, support jurisdiction over the defendant.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citation and quotations omitted).

Under the first prong, the Ninth Circuit instructs that a plaintiff may prove specific jurisdiction through either purposeful availment of or purposeful direction at the forum state. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).  Because Plaintiff alleges Defendants acted tortiously, the Court will assess jurisdiction under the purposeful direction test.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)("In tort cases, we typically inquire whether a defendant purposefully directs his activities at the forum state, applying an effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum.") (cleaned up); *see also Arc Wood & Timbers, LLC v. Riverwood Flooring & Paneling, Inc.*, No. 21-CV-04885-HSG, 2021 WL 5771136, at *3 (N.D.

Cal. Dec. 6, 2021) ("Under the purposeful direction test, which is often the better approach for tort claims, courts look to whether the defendant has directed its actions at the forum state, even if those actions took place elsewhere."). Under the purposeful direction test, the Court applies a three-step "effects" test to determine whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803. The Court looks to the defendant's contacts with the forum state itself, not just the fact that the alleged victim resides in the state. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) ("The plaintiff cannot be the only link between the defendant and the forum.") (quoting *Walden v. Fiore*, 571 U.S. 277, 277 (2014)).

Plaintiff alleges that Defendants "intentionally acted to wrongfully divert and retain funds and intellectual property rights from a California corporation and resident," and that those actions were initiated by the Canadian Entities. Opp. at 6. Defendants argues the Court lacks specific jurisdiction because the FAC "identifies the Canadian Entities as mere recipients of allegedly-misallocated funds." Dkt. No. 32 ("Reply") at 3; Mot. at 5-6.

The Court agrees that Plaintiff fails to sufficiently plead that Defendants committed any intentional act aimed at California. *See Schwarzenegger*, 374 F.3d at 803. Plaintiff solely alleges that 3GL "revenues resulting from product sales *were being diverted* to the Higgins[es] and their companies in Canada and through foreign bank accounts controlled by the Higgins[es] beyond Mr. Pratt's reach or knowledge," FAC ¶ 56 (emphasis added), and that "Mr. Higgins executed an assignment that *purported to transfer* his alleged individual ownership rights in the Artwork to EHI." FAC ¶ 64 (emphasis added). The Canadian Entities purported receipt of allegedly illicit assets and funds is not enough to support jurisdiction. *See Picot*, 780 F.3d at 1215 (finding no prima facie showing of specific personal jurisdiction because the plaintiff did not "enter[] California, contact[] any person in California, or otherwise reach[] out to California"). And Plaintiff's reliance on *Dole Food Co. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002), is inapposite because the *Dole* court found that that the defendants "traveled to California on multiple occasions," advised the plaintiff on business while in California, "knew that the decisionmakers for [plaintiff] were located in California, and communicated directly with those California decisionmakers." *Id.* at 1109, 1112. Here, Plaintiff fails to allege any initiated action or communication by the Canadian Entities directed to 3GL, arguing only that they illicitly received funds at the direction of Mr. Higgins. *See id.* As such, the Court finds Plaintiff fails to make a prima facie showing that the Court has personal jurisdiction over the Canadian Entities under the "effects" test.

### ii.   Alter Ego Jurisdiction

The Ninth Circuit has held that the corporate veil may be pierced using alter ego jurisdiction "to exercise personal jurisdiction over a foreign defendant in certain limited circumstances." *Ranza*, 793 F.3d at 1071.  Alter ego jurisdiction can be a basis for establishing personal jurisdiction where "the parent and subsidiary are not really separate entities, or one acts as an agent of the other." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).  "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (citation and quotations omitted).  The Court begins with a presumption of corporate separateness that is only overcome when justice so requires.  *Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2020 WL 7428320, at *3 (N.D. Cal. Dec. 18, 2020).

### a.   Unity of Interest and Ownership

To establish personal jurisdiction over entity defendants based on jurisdiction over a natural person, Plaintiff must establish "that there is such a unity of interest and ownership between the corporation and the shareholder that the two no longer exist as separate entities." *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir. 1979).  Unity of interest and ownership is a fact-intensive analysis that requires the Court to

> consider numerous factors, including inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002).  "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." *Id.*

Defendants argue that Plaintiff fails to meet the heightened burden of showing that the Canadian Entities are the alter ego of Mr. Higgins because he makes only "conclusory allegation[s]" of ownership and control.  Mot. at 6-7.  Plaintiff argues that "EHI and 3GI are mere

instrumentalities created by Mr. Higgins to strip 3GL of its assets and IP to the detriment of 3GL and Pratt." Opp. at 11. The Court agrees with Defendants.

Here, Plaintiff does not allege in the complaint, or proffer evidence sufficient to establish, that the Canadian Entities are the alter ego of Mr. Higgins. While both parties acknowledge that Mr. Higgins is the sole owner and controller of both 3GL and EHI, FAC ¶¶ 8-12, the FAC only alleges transfers of funds from 3GL to the Canadian Entities, purported obfuscation in branding 3GL and EHI, and conclusory claims "on information and belief" that Mr. Higgins failed to "hold actual board meetings, prepare minutes, or otherwise operate EHI and 3GI as actual, independent companies." FAC ¶ 11, 46-47, 51-52. The FAC fails to allege any facts suggesting inadequate capitalization, use of the same offices and employees, lack of segregation of corporate records, or any concrete disregard for corporate formalities since at least EHI's inception in 2014. *See NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 998 (E.D. Cal. 2012) (holding that an out-of-state natural person was not the alter ego of a corporation because although "[the defendant] is the common owner of a 'consolidated enterprise' operating farms under various trade names, common ownership alone is insufficient to support disregard of the corporate form") (citation and quotations omitted); see *also In re Boon Glob. Ltd.*, 923 F.3d 643, 654 (9th Cir. 2019) ("[J]urisdiction cannot lie where there is no evidence of undercapitalization, failure to keep adequate records, or the free transfer of company assets—all of which would normally be signs of a sham corporate veil."). Nor does Plaintiff sufficiently allege that Mr. Higgins "dictates every facet of [Defendants'] business, including routine matters of day-to-day operations." *See Ranza*, 793 F.3d at 1074.

On balance, when these factors are considered together, Plaintiff fails to adequately allege facts (rather than conclusions on "information and belief") showing a disregard of the corporate form of the Canadian Entities by Mr. Higgins. Accordingly, Plaintiff fails to establish a unity of interest among the Canadian Entities and Mr. Higgins, which in turn requires dismissal of Plaintiff's alter ego-based claim of jurisdiction.

**b.    Inequitable Result**

"Where a plaintiff fails to satisfy the 'unity of interest' prong, a court need not analyze the

1    fraud or injustice prong." *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1008 (N.D.

2    Cal. 2020) (citation and quotations omitted). However, even if the Court considers Plaintiff's

3    argument, it finds that he has failed to establish that an inequitable result would follow from a

4    failure to disregard the separate identities of Mr. Higgins and the Canadian Entities.

5        Plaintiff asserts that EHI and 3GI are depriving plaintiff of funds and IP that were

6    improperly diverted from 3GL without his consent or knowledge. FAC ¶¶ 51-68. Specifically,

7    Plaintiff alleges "[a]lthough 3GL would incur all or most of the expenses . . . the company

8    revenues resulting from product sales were being diverted to the Higgins and their companies in

9    Canada and through foreign bank accounts controlled by the Higgins beyond Mr. Pratt's reach or

10   knowledge." FAC ¶ 56. However, even assuming that EHI and 3GI are the alter egos of Mr.

11   Higgins, the Higginses are before the Court to make good on any potential judgment. *See Stewart*

12   *v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 957 (N.D. Cal. 2015) (finding that alter ego

13   jurisdiction was not appropriate, in part, because the party the defendants had privity with "is

14   properly before the Court to answer Plaintiff's claim and satisfy any potential judgment"); *No*

15   *Cost Conf., Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1298 (S.D. Cal. 2013)

16   (holding that bringing another party into an action "for purposes of being able to collect an

17   eventual judgment, if any," is "insufficient to establish the injustice or fraud element of the alter

18   ego test"). Plaintiff also could seek relief in another jurisdiction in which the Canadian Entities

19   are amenable to suit.[1]

20       **C.    Jurisdictional Discovery**

21       The decision whether to grant jurisdictional discovery is within the discretion of the district

22

23   _____

     [1] Plaintiff's claim of conspiracy jurisdiction fails because the Ninth Circuit and California do not
24   recognize conspiracy claims as a valid basis for granting personal jurisdiction over a party.
     *Chirila v. Conforte*, 47 F. App'x 838, 843 (9th Cir. 2002) ("The cases are unanimous that a bare
25   allegation of a conspiracy between the defendant and a person within the personal jurisdiction of
     the court is not enough.") (citation and quotations omitted); *Mansour v. Superior Ct.*, 38 Cal. App.
26   4th 1750, 1760, 46 Cal. Rptr. 2d 191, 197 (1995)("California does not recognize conspiracy as a
     basis for acquiring personal jurisdiction over a party."). Plaintiff's citation to *Underwager v.*
27   *Channel 9 Australia*, 69 F.3d 361 (9th Cir. 1995), does not change this conclusion, because the
     *Underwager* Court affirmed the district court's dismissal for lack of personal jurisdiction
28   "[w]ithout expressing any opinion on the validity of the conspiracy theory of personal
     jurisdiction." *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1138 (D. Nev.
     2009).

United States District Court
Northern District of California

1  court.  *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

2  "[C]ourts in this district have held that a plaintiff need not make out a prima facie case of personal

3  jurisdiction before it can obtain jurisdictional discovery."  *Calix Networks, Inc. v. Wi-Lan, Inc.*,

4  No. C-09-06038-CRB DMR, 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) (collecting

5  cases).  "Rather, a plaintiff must present a 'colorable basis' for jurisdiction, or 'some evidence'

6  constituting a lesser showing than a prima facie case."  *Id.* (citing *Google, Inc. v. Egger*, No. 08-

7  cv-03172-RMW, 2009 WL 1228485, at *1 (N.D. Cal. Apr. 30, 2009); *Focht v. Sol Melia S.A.*, No.

8  10-cv-0906-EMC, 2010 WL 3155826, at *2 (N.D. Cal. Aug. 9, 2010)).  A "'colorable basis' could

9  be understood to require the plaintiff to come forward with 'some evidence' tending to establish

10  personal jurisdiction over the defendant."  *Google*, 2009 WL 1228485, at *1 (quoting *Chapman v.

11  Krutonog*, 256 F.R.D. 645, 649 (D. Haw. 2009)).  "Where a plaintiff's claim of personal

12  jurisdiction appears to be both attenuated and based on bare allegations in the face of specific

13  denials made by defendants, the Court need not permit even limited discovery."  *Terracom v.

14  Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citations omitted); *see also Getz v. Boeing

15  Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (finding the denial of discovery appropriate when the

16  plaintiffs "fail[ed] to identify any specific facts, transactions, or conduct that would give rise to

17  personal jurisdiction" and offered only "purely speculative allegations of attenuated jurisdictional

18  contacts").

19         The Court concludes that Plaintiff fails to establish a colorable basis for personal

20  jurisdiction so as to be entitled to jurisdictional discovery.  Plaintiff's recitation of financial

21  transactions, FAC ¶¶ 50-55, does not tend to suggest that discovery will establish facts supporting

22  this Court's jurisdiction over the Canadian Entities.  *Reynolds*, 481 F. Supp. 3d 1010 (holding that

23  "simply stating that facts are disputed and [the defendant] offers insufficient evidence for one of

24  its arguments" is not grounds for jurisdictional discovery).  The bare assertion "on information and

25  belief" that Mr. Higgins disregarded corporate formalities as to the Canadian Entities "offers no

26  more than a hunch that discovery would yield jurisdictionally relevant facts," and does not justify

27  circumventing the normal principles of personal jurisdiction, especially given the presumption of

28  separateness the Court begins with here.  *See id.* at 1010. Accordingly, the Court in its discretion

8

1 | denies Plaintiff's request to conduct jurisdictional discovery.

## III.    MOTION TO DISMISS: STATUTE OF LIMITATIONS

### A.    Legal Standard

"A plaintiff must bring a claim within the limitations period after accrual of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (citing Cal. Code Civ. P. § 312). A cause of action accrues when all of its elements are completed. *See id.* Accrual may be delayed under the discovery rule, which permits delaying the accrual of a claim until the plaintiff discovers or has reason to discover the cause of action. *See id.* at 807. To rely on the delayed discovery rule, a plaintiff must plead facts showing (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. *See id.* "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. County of Los Angeles*, 159 Cal.App.4th 42, 61 (2008) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1112 (1988)). At the dismissal stage, the Court "must assume to be true any specific allegations explaining that the plaintiff did not discover, nor suspect, nor was there any means through which her reasonable diligence would have revealed, or through which she would have suspected the defendant's action as a cause of her injury." *Jaeger v. Howmedica Osteonics Corp.,* No. 15-CV-00164-HSG, 2016 WL 520985, at *10 (N.D. Cal. Feb. 10, 2016) (citations, internal brackets and quotations omitted).

Plaintiff's claims for unfair competition and improper distribution have a four-year statute of limitations. *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016) (UCL); Cal. Corp. Code § 17704.06(e) (improper distribution). Plaintiff's claims for breach of fiduciary duty, conversion, concealment, and unjust enrichment all have a three-year statute of limitations. *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1010 (N.D. Cal. 2015) (breach of fiduciary duty "where the gravamen of the claim is fraud"); *Daly v. Pearl Spirits, Inc.*, 438 F. App'x 644, 645 (9th Cir. 2011) (conversion and concealment); *Focus 15, LLC v. NICO Corp.*, No. 21-CV-01493-EMC, 2022 WL 267441, at *11 (N.D. Cal. Jan. 28, 2022) (unjust enrichment on the ground of fraud). Plaintiff's claims for breach of duty of good faith and fair dealing and improper

*United States District Court*
*Northern District of California*

9

1    distribution have a two-year statute of limitations.  *Flynn v. Paul Revere Ins. Grp.*, 2 F. App'x

2    885, 886 (9th Cir. 2001).[2]

3          **B.    Discussion**

4          Defendants argue that each of Plaintiff's causes of action is time barred.  Mot. at 8-12.

5    Plaintiff asserts that his claim accrued in 2021 when he conducted a forensic accounting

6    investigation that allegedly uncovered Defendants' wrongdoing.  FAC ¶¶ 48-49, 58; Opp. at 14.

7    Contrary to Defendants' assertion that he was on inquiry notice because "it is implausible that

8    [Plaintiff] would plough ahead, working for free for almost a decade, without bothering to look at

9    any of the records," Mot. at 10, the FAC alleges that Plaintiff trusted the Higginses with the firms'

10   financial operations and devoted his efforts to product development, marketing, and sales.  FAC ¶

11   36.  Plaintiff alleges that he was never provided a comprehensive accounting of 3GL's income and

12   expenses, was told to forward business mail to the Higginses without opening, was removed from

13   all correspondence at the direction of Mrs. Higgins, was told to not access 3GL's bank account

14   records, and relinquished all financial control of the business to Mrs. Higgins.  FAC ¶¶ 19, 34, 37-

15   38, 45-47, 57, 69.  Plaintiff alleges that he had no knowledge or reason to believe that the

16   Canadian Entities even existed, including while Mr. Higgins was undertaking litigation regarding

17   the IP of 3GL's product labels and his prior employer, because Pratt trusted the Higginses.  FAC

18   ¶¶ 34, 37, 45–47.

19         The Court finds that Plaintiff sufficiently alleges facts that could toll the statute of

20   limitations under the discovery rule.  When it became reasonable for Plaintiff to become

21   suspicious ultimately will be a disputed question of fact, but accepting Plaintiff's allegations as

22   true at the dismissal stage, it is plausible that Plaintiff discovered the alleged wrongful conduct

23   following a forensic accounting in 2021, which if true would make all claims timely.  *See Ovando*,

24   159 Cal.App.4th at 61; FAC ¶ 49.  The motion to dismiss on statute of limitations grounds is thus

25   denied.

26

27   _____

28   [2] As an unpublished Ninth Circuit decision, *Flynn* and any other unpublished cases cited are not
     precedent, but may be considered for their persuasive value.  *See* Fed. R. App. P. 32.1; CTA9 Rule
     36-3.

## IV.    MOTION TO DISMISS: FAILURE TO STATE A CLAIM

### A.    Legal Standard

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  F.R.Civ.P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.");  *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

#### i.    Breach of Fiduciary Duty and Duty of Good Faith and Fair Dealing

Plaintiff alleges Mr. Higgins improperly and secretly transferred IP assets and over $6.7 million from 3GL to the Canadian Entities and third parties for his own benefit, creating a conflict

of interest.  FAC ¶¶ 45-47, 51-52, 55-57, 64.  Defendants argue that their conduct was protected by the business judgment rule, which is an affirmative defense, and that Plaintiff fails to adequately allege claims against Mrs. Higgins.  *See* Mot. at 13–14.  Whether the business judgment rule applies is fundamentally a question of fact.  *See Fed. Deposit Ins. Corp. v. Switzer*, No. 13-cv-03834-RS, 2014 WL 12696532, at *2 (N.D. Cal. Apr. 9, 2014) ("[R]uling on the applicability of the business judgment rule is peculiarly a question of fact . . . .").  Taking the allegations of the FAC as true, the Court finds that Plaintiff has alleged sufficient facts to support an inference that Defendants acted with improper motives or subject to a conflict of interest such that they breached their fiduciary duties.  *See Everest Invs. 8 v. McNeil Partners*, 114 Cal. App. 4th 411, 430 (2003)("The business judgment rule does not shield actions taken without reasonable inquiry, with improper motives, or as a result of a conflict of interest.").

Separately, the Court finds that Plaintiff satisfactorily alleges claims against Mrs. Higgins as a "fiduciary-in-fact."  Plaintiff asserts that Mrs. Higgins "took steps to assert near total control over 3GL's financial affairs and business operations," including "actively, deliberately and continuously commingl[ing] and divert[ing] 3GL's revenues and cash assets" to herself and Mr. Higgins.  FAC ¶¶ 34, 51-56, 58.  As a matter of law, "an officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation." *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 981 (N.D. Cal. 2006) (citing *GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, 83 Cal.App.4th 409, 420–21 (Cal.Ct.App.2000), overruled on other grounds, *Reeves v. Hanlon*, 33 Cal.4th 1140 (Cal.2004)).  The threshold question of whether an officer participates in management is a question of fact.  *Id*.  "There are no specific requirements of, [for example,] hiring and firing authority." *Arthur J. Gallagher & Co. v. Tarantino*, No. 20-CV-05505-EMC, 2022 WL 4092673, at *18 (N.D. Cal. July 27, 2022) (citing *IDX Tech., Inc. v. Aspen Elecs.*, Inc. No. G025520, 2001 WL 1382758, at *3 (Cal. Ct. App. Nov.7, 2001)).  At the dismissal stage, Plaintiff sufficiently alleges that Mrs. Higgins managed the finances and operations of 3GL, including by making allegedly improper transfers without Plaintiff's knowledge or consent.  FAC ¶¶ 56, 58.

        **ii.**    **Improper Distributions under the LLC Act**

Defendants argue that Plaintiff fails to state a claim under the LLC Act for improper distribution because that claim is "narrowly limited to the situation where an insider takes a distribution that would bankrupt an LLC" and "Plaintiff does not—and cannot—identify a single instance of the LLC not being able to pay its debts as they became due." Mot. at 17-18.  Under California law, "[a] limited liability company shall not make a distribution if… [t]he limited liability company would not be able to pay its debts as they become due in the ordinary course of the limited liability company's activities." Cal. Corp. Code § 17704.05 (a)(1).  Plaintiff argues that Mr. Higgins received over $7 million in transfers from 3GL while "saddling 3GL with recourse liabilities equal to $5,741,440." Opp. at 20; FAC ¶¶ 53, 55, 74. Because Plaintiff has not demonstrated how 3GL suffers from potential insolvency or it is unable to "pay its debts as they became due," and cites no case law suggesting that simply making distributions from an entity that has outstanding debt violates the statute, the Court grants defendant's motion to dismiss Plaintiff's claim under the LLC Act based on the allegedly improper distribution.

### iii.    Conversion

Under California law, "[t]he elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Brock v. Concord Auto. Dealership LLC*, No. 14-CV-01889-HSG, 2015 WL 3466543, *4 (N.D. Cal. June 1, 2015) (citing *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014)).  "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved." *Id.* (citations omitted).

Defendants argue that Plaintiff's claim for conversion fails because "Plaintiff fails to specifically state what property Defendants have allegedly converted," as well as "identify the amount of money converted by Defendants and that such sum was not transferred pursuant to a legitimate business transaction." Mot. at 19.  This assertion is inconsistent with the FAC. Plaintiff alleges 3GL owned IP related to fertilizer formulas, trademarks, copyrights, designs and patents, all of which was allegedly wrongly transferred to Defendants.  FAC ¶¶ 66-68.  For example, Plaintiff asserts that the "Emerald Edge" concept was misappropriated by Defendants "by rebranding it with a new mark, NEXGEN." *Id.*  Additionally, Plaintiff alleges specific sums

1   of money that were allegedly wrongly transferred from 3GL to EHI, 3GI, and the Higginses.  FAC

2   ¶¶ 51-55.  Accordingly, the Court denies Defendants' motion to dismiss the conversion claim.

3          **iv.    Concealment**

4          Defendants argue that Plaintiff's claim for concealment is duplicative of the breach of

5   fiduciary duty and conversion claims.  Mot. 19-20.  Plaintiff argues his claim of concealment is

6   not duplicative because the parties are dissimilar, concealment is a different legal theory than the

7   fiduciary breach and conversion claims, and that they are permitted to plead in the alternative.

8   Opp. at 21.  The Court agrees with Plaintiff.

9          As a procedural matter, parties may plead alternative claims in the complaint.  *Smith v.*

10  *United Healthcare Ins. Co.*, No. 18-CV-06336-HSG, 2019 WL 3238918, at *4 (N.D. Cal. July 18,

11  2019) ("The Federal Rules of Civil Procedure allow a party to 'set out 2 or more statements of a

12  claim or defense alternatively or hypothetically, either in a single count or defense or in separate

13  ones.'")(citing Fed. R. Civ. P. 8(d)(2)).  Defendants' assertion that "Plaintiff does not identify any

14  such facts that would inform the elements of his concealment claim that do not inform the

15  elements of the other claims" is inaccurate.  Reply at 12.  Plaintiff states that he ultimately may be

16  able to prove that Defendants breached its fiduciary duty by improperly transferring funds, but not

17  that these acts were concealed from Plaintiff.  *See* Opp. at 21.  Thus, because parties are permitted

18  to plead in the alternative, the Court denies Defendants' motions to dismiss Plaintiff's

19  concealment claim.

20         **v.     Dissociation of 3GL**

21         Defendants argue that Plaintiff's claim for dissociation fails "for the same reasons that

22  Plaintiff's breach of fiduciary duty claim fails."  Mot. at 20.  As discussed above in Section

23  IV(A)(i), Plaintiff has sufficiently pled claims of fiduciary breach, meaning that this claim

24  likewise survives.

25         **vi.    Appointment of Receiver**

26         California law permits a court to appoint a receiver "in an action… between partners or

27  others jointly owning or interested in any property or fund," or "[i]n all other cases where

28  necessary to preserve the property or rights of any party."  Cal. Civ. Proc. Code § 564(b)(1), (9).

United States District Court
Northern District of California

1   The appointment of receiver is an extreme and rarely utilized remedy, particularly when requested

2   in a complaint.  *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) ("Under

3   federal law, appointing a receiver is an extraordinary equitable remedy, which should be applied

4   with caution."); *Bracco v. Lackner*, 462 F. Supp. 436, 456 (N.D. Cal. 1978) ("Receivership is a

5   remedy of last resort"); *Aiuto v. San Francisco's Mayor's Off. of Hous.*, No. C 09-2093 CW, 2010

6   WL 1532319, at *11 (N.D. Cal. Apr. 16, 2010) ("If Plaintiffs seek [the appointment of a receiver],

7   they must make their request through a noticed motion, not through their FAC.").  At the pleading

8   stage, Defendants have not shown that the remedy of receivership is entirely unavailable as a

9   matter of law.  While Plaintiff's claim appears to be a significant stretch, whether Plaintiff can

10  meet the high standard for receivership will be for a later stage of this case.

11            **vii.    Violations of Penal Code § 496**

12            California Penal Code § 496 criminalizes buying or receiving "any property that has been

13  stolen or that has been obtained in any manner constituting theft or extortion, knowing the

14  property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing,

15  selling, or withholding any property from the owner, knowing the property to be so stolen or

16  obtained."  Cal. Penal Code § 496(a).  The California Supreme Court recently held in *Siry Inv.,*

17  *L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 362 (2022), that liability attaches under § 496 when

18  "defendants act[] not innocently or inadvertently, but with careful planning and deliberation

19  reflecting the requisite criminal intent."  *Id.*  District courts have applied *Siry*'s pleading standard

20  in civil theft cases.  *See Injective Labs Inc. v. Wang*, No. CV 22-943-WCB, 2023 WL 3318477, at

21  *9 (D. Del. May 9, 2023) (holding that the defendant's "allegations are sufficient to state a claim

22  of civil theft" because "purposeful theft, misappropriation, and embezzlement constitute more than

23  a claim of an ordinary commercial default that can be addressed through a breach of contract

24  claim") (cleaned up); *see also McCraner v. Wells Fargo & Co.*, No. 21-CV-1246-LAB-WVG,

25  2023 WL 2728719, at *8 (S.D. Cal. Mar. 30, 2023) (holding that "the FAC alleges that the money

26  [the defendant] received . . . was obtained through fraud and false pretenses, [] which is sufficient

27  to allege a theft within the meaning of Penal Code § 496.").

28            Plaintiff alleges a series of improper transfers of assets and funds by the Higginses for their

United States District Court
Northern District of California

benefit at the expense of 3GL and Plaintiff.  Plaintiff identifies the amounts transferred, dates of the alleged transfers, and a summary of the transfers, as well as providing information regarding trademark misappropriation related to Emerald Edge.  FAC ¶¶ 51-55, 67-68.  The Court finds, taking the allegations as true as it must at this stage, that Plaintiff plausibly alleges theft of funds and assets from a joint venture in a deliberate and calculated manner that supports an inference of the required intent under § 496.  FAC ¶¶ 51-55, 67-68.  While the Court would not be surprised if this claim turns out to be an overreach at the summary judgment or trial stage, that determination is for a later day.  Thus, the Court denies Defendants' motion to dismiss Plaintiff's claim under § 496.

### viii.    Violations of Penal Code § 502

The California Computer Data Access and Fraud Act ("CDAFA"), Penal Code § 502, criminalizes accessing and taking data without permission, disrupting or denying computer services to an authorized user, or accessing a computer without permission.  Pen. Code §§ 502(c)(2), (5), (7).  As a preliminary matter, § 502 requires Plaintiff to allege a cognizable loss. *See Nowak v. Xapo, Inc.*, No. 5:20-CV-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (dismissing CDAFA claim because the value of stolen cryptocurrency was not a cognizable loss under the statute).  In the context of a § 502 violation, "loss" has been defined to encompass costs related to fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services.  *See id.* at *4.  Here, Plaintiff fails to plead any facts supporting an inference that Defendants' alleged hacking caused any cognizable loss, instead only asserting that "the Higgins[es] and/or their agent(s) unlawfully accessed [his] private and non-work-related Evernote internet account," gaining access to Plaintiff's "privileged communications with counsel, his personal diary, as well as [Plaintiff's] medical notes."  FAC ¶¶ 70, 72.  Moreover, Plaintiff's request for "damages in a sum to be determined at trial" is insufficient, and he offers no authority supporting his claim that accessing communications with counsel, personal notes, and medical information gave rise to any cognizable loss.  *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (dismissing CDAFA claim because the "[p]laintiffs offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and

United States District Court
Northern District of California

United States District Court
Northern District of California

the loss of the right to protection of the data, as discussed above, is 'damage or loss' within the meaning of the CDAFA").  Accordingly, the Court grants Defendants' motion to dismiss with respect to Plaintiff's claim under § 502.

### ix.    Aiding and Abetting

"Liability may be imposed on one who aids and abets the commission of an intentional tort if the person knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act."  *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93 (2007) (citation and quotations omitted).  "Substantial assistance requires a significant and active, as well as a knowing participation in the wrong, and a plaintiff must also allege that the defendant's conduct was a substantial factor in bringing about the injury allegedly suffered by the plaintiff."  *Chang v. Wells Fargo Bank, N.A.*, No. 19-CV-01973-HSG, 2020 WL 1694360, at *6 (N.D. Cal. Apr. 7, 2020) (citation and quotations omitted).  Defendants argue that there is no aiding and abetting liability against the Canadian Entities because they only "passively received funds" and the Higginses "generally oversaw" day-to-day operations rather than providing the required "substantial assistance" for a claim of aiding and abetting.  Mot. at 25.  Plaintiff contends that Mrs. Higgins and the Canadian Entities substantially assisted or encouraged Mr. Higgins in the allegedly illicit transfer of funds and assets that harmed Plaintiff, and that these acts were done knowingly.  FAC ¶¶ 33 – 35, 191-194.

Accepting Plaintiff's allegations as true, the Court finds aiding and abetting adequately pled with respect to Mrs. Higgins.  Plaintiff sufficiently alleges that Mrs. Higgins aided and abetted Mr. Higgins by allegedly taking over 3GL's finances and improperly diverting 3GL's funds and assets for their mutual personal gain.  FAC ¶¶ 34, 36, 38, 41, 42, 49-68.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claim of aiding and abetting as to Mrs. Higgins.[3]

### V.    CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

---

[3] Because the Court lacks personal jurisdiction over the Canadian Entities, the Court need not address Plaintiff's aiding and abetting claims as to EHI and 3GI.

1      The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.

2 The Court **GRANTS** Defendants' motion to dismiss the Canadian Entities for lack of personal

3 jurisdiction. The Court also **GRANTS** the motion as to Plaintiff's claims for improper

4 distributions under the LLC Act and violations of Penal Code § 502. The Court **DENIES**

5 Defendants' motion to dismiss on statute of limitations grounds, as well as with respect to

6 Plaintiff's claims for breach of fiduciary duty, conversion, concealment, dissociation, appointment

7 of receivership, violation of penal code § 496, and aiding and abetting with respect to Mrs.

8 Higgins.

9      At this stage in the litigation, the Court cannot say that amendment would be futile. *See*

10 *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district court should grant

11 leave to amend even if no request to amend the pleading was made, unless the pleading could not

12 possibly be cured by the allegation of other facts.") (quotation omitted).  Plaintiff may therefore

13 file an amended complaint within 21 days of the date of this order.

14      The Court **DIRECTS** the parties to meet and confer and submit a joint case management

15 statement by August 15, 2023. The Court further **SETS** a case management conference for August

16 22, 2023 at 2:00 p.m.  The parties should be prepared to discuss how to move this case forward

17 efficiently. All counsel shall use the following dial-in information to access the call:

18      Dial-In: 888-808-6929;

19      Passcode: 6064255

20 For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all

21 possible, parties shall use landlines.  All attorneys and pro se litigants appearing for a telephonic

22 case management conference are required to dial in at least 15 minutes before the hearing to check

23 in with the CRD.

24      **IT IS SO ORDERED.**

25 Dated:  7/17/2023

26

27                      HAYWOOD S. GILLIAM, JR.
                     United States District Judge

28

United States District Court
Northern District of California