UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PRATT,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT C. HIGGINS, et al.,<br><br>    Defendants. | Case No. 22-cv-04228-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 45 |

Before the Court is a motion filed by Defendants Robert Higgins ("Mr. Higgins"), Sharon Higgins ("Mrs. Higgins"), Green Garden Group, Inc. ("3GI"), and Emerald Harvest, Inc. ("EHI") seeking to dismiss certain causes of action alleged in Plaintiff's Second Amended Complaint. *See* Dkt. No. 45 ("Mot."); *see also* Dkt. No. 44 (Second Amended Complaint or "SAC"). The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion.

**I.    BACKGROUND**

Even after the case was trimmed down somewhat following the Court's first motion to dismiss order, the SAC still asserts a long list of claims: (1) breach of fiduciary duty; (2) breach of duty of good faith and fair dealing; (3) receiving improper distributions; (4) unjust enrichment and restitution; (5) conversion; (6) concealment; (7) accounting and restitution; (8) dissociation; (9) appointment of receiver; (10) violations of California's Unfair Competition Law; (11) fraudulent concealment; (12) civil remedies for theft and/or receipt of stolen property; and (13) aiding and abetting. SAC ¶¶ 94–199.

The SAC alleges that Plaintiff David Pratt ("Plaintiff" or "Pratt") entered into a verbal

agreement with Mr. Higgins on January 27, 2014 to form Nominal Defendant 3G Green Garden Group, LLC ("3GL") to develop and own fertilizer products. SAC ¶¶ 27, 28. Mr. Higgins is the co-founder and CEO of 3GL, maintaining 51% equity in the company, Pratt owned 25%, and Mrs. Higgins owned 24% equity (allegedly without Plaintiff's knowledge). SAC ¶¶27, 28. 28. 3GL's principal place of business is in Santa Rosa, California. SAC ¶ 6. In 2014, Mr. Higgins also formed defendant Emerald Harvest, Inc. ("EHI"), and in 2017 formed Green Garden Group, Inc. ("3GI"). SAC ¶ 30, 56. Pratt alleges that Mr. Higgins, along with his wife Mrs. Higgins, "assumed total control over the affairs of 3GL and hid its financial and business information from Pratt." Dkt. No. 46 ("Opp.") at 2; SAC ¶¶ 41–50. In essence, Plaintiff alleges that Mr. Higgins created and used the defendant entities to wrongfully divert assets and funds away from 3GL to the Defendants and third parties for his and his wife's personal gain. Opp. at 2.

Plaintiff filed his complaint in state court on June 15, 2022. *See* Dkt. No. 1-1. The case was removed on July 20, 2022. *See* Dkt. No. 1. Defendants moved to dismiss and this Court granted in part and denied in part that motion. *See* Dkt. 42. Plaintiff filed a second amended complaint, *see* Dkt. No. 44, and Defendants again move to dismiss, *see* Dkt. No. 45.

## II.  LEGAL STANDARD

### A.  Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons" and entities. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). California law authorizes jurisdiction to the full extent permitted by the U.S. Constitution. Cal. Civ. Proc. Code § 410.10. In determining whether the Court has personal jurisdiction satisfying the requirements of due process, the Court must ascertain whether the defendant has "certain minimum contacts" with California "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotations omitted). In conducting its inquiry, the Court must determine whether the contacts with the forum state confer specific or general jurisdiction. *Daimler*, 571 U.S. at 118.

### B.  Failure to State a Claim

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain

2

statement of the claim showing that the pleader is entitled to relief[.]" F. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### III.   DISCUSSION

#### A.   Personal Jurisdiction

Previously, the Court granted Defendants' motion to dismiss EHI and 3GI (the "Canadian Entities") for lack of personal jurisdiction. *See* Dkt. No. 42 at 2–7. The Court found that Plaintiff failed to establish either direct specific personal jurisdiction or jurisdiction imputed from Mr. Higgins via the alter-ego doctrine. *See id.* at 2. Plaintiff amended his complaint but has again

3

failed to establish personal jurisdiction over the Canadian Entities.

### i. Specific Jurisdiction

"Specific jurisdiction exists when a case arises out of or relate[s] to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "When a defendant's motion to dismiss on jurisdictional grounds rests only on written materials rather than on testimony at an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Herbal Brands, Inc. v. Photoplaza, Inc.*, No. 21-17001, 2023 WL 4341454, at *3 (9th Cir. July 5, 2023) (citation and quotations omitted). The Ninth Circuit instructs district courts to assess specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two elements. *Id*. At the dismissal stage, the plaintiff need only make a prima facie showing of jurisdictional facts that, if true, support jurisdiction over the defendant. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citation and quotations omitted).

Under the first prong, the Ninth Circuit instructs that a plaintiff may prove specific jurisdiction through either purposeful availment of or purposeful direction at the forum state. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma*, S.A., 972 F.3d 1101, 1107 (9th Cir. 2020). Because Plaintiff alleges Defendants acted tortiously, the Court will assess jurisdiction under the purposeful direction test. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) ("In tort cases, we typically inquire whether a defendant purposefully directs his activities at the forum state, applying an effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions

4

themselves occurred within the forum.") (cleaned up); *see also Arc Wood & Timbers, LLC v. Riverwood Flooring & Paneling, Inc.*, No. 21-CV-04885-HSG, 2021 WL 5771136, at *3 (N.D. Cal. Dec. 6, 2021) ("Under the purposeful direction test, which is often the better approach for tort claims, courts look to whether the defendant has directed its actions at the forum state, even if those actions took place elsewhere."). Under the purposeful direction test, the Court applies a three-step "effects" test to determine whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803. The Court looks to the defendant's contacts with the forum state itself, not just the fact that the alleged victim resides in the state. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) ("The plaintiff cannot be the only link between the defendant and the forum.") (quoting *Walden v. Fiore*, 571 U.S. 277, 277 (2014)).

In its prior order, the Court held that "Plaintiff fail[ed] to allege any initiated action or communication by the Canadian Entities directed to 3GL, arguing only that they illicitly received funds at the direction of Mr. Higgins." Dkt. No. 42 at 4. Plaintiff has failed to cure the deficiencies the Court previously identified. Plaintiff's allegations still largely concern the Canadian Entities' alleged receipt of funds, but the Court already ruled that "[t]he Canadian Entities purported receipt of allegedly illicit assets and funds is not enough to support jurisdiction." *Id*. (citing *Picot*, 780 F.3d at 1215) (finding no prima facie showing of specific personal jurisdiction because the plaintiff did not "enter[] California, contact[] any person in California, or otherwise reach[] out to California"). Further, the SAC alleges that "EHI also applied for and received a license issued by the California Department of Food and Agriculture ('CDFA'), pursuant to which EHI has at all relevant times been registered and licensed to sell fertilizer products in California," and that "EHI deceptively applied for the license under the name of 'Emerald Harvest,' without indicating whether it referred to 3GL or EHI." SAC ¶ 57. Plaintiff argues that this establishes personal jurisdiction. The Court disagrees. Plaintiff still has not plausibly alleged how the Canadian Entities committed any intentional acts aimed at California. Nor has he explained how obtaining a license in California satisfies the effects test. The mere allegation that the Canadian Entities obtained a license in California, without any further

1  allegations about their purposeful activity there, is not a basis for finding personal jurisdiction.
2  *See Carter v. Round Point Mortg.,* No. EDCV 20-240 JGB, 2020 WL 6032653, at *3 (C.D. Cal.
3  Aug. 4, 2020) ("California courts have concluded that the mere registration to do business in
4  California and appointment of an agent for service of process cannot be construed as constituting
5  broad consent to personal jurisdiction within the state."). Here, the Court agrees with Defendants
6  that nothing in the SAC supports an inference that any of the harms actually alleged relate to or
7  arise from the existence of the license. Plaintiff's argument that Defendant's license "created a
8  false public appearance," Opp. at 7, simply does not establish that his *own* alleged injuries arose
9  from this purported contact with the forum. Accordingly, the Court finds that Plaintiff again fails
10 to make a prima facie showing that the Court has personal jurisdiction over the Canadian Entities
11 under the "effects" test.

        **ii.  Alter Ego Jurisdiction**

13 The Ninth Circuit has held that the corporate veil may be pierced using alter ego
14 jurisdiction "to exercise personal jurisdiction over a foreign defendant in certain limited
15 circumstances." *Ranza*, 793 F.3d at 1071. Alter ego jurisdiction can be a basis for establishing
16 personal jurisdiction where "the parent and subsidiary are not really separate entities, or one acts
17 as an agent of the other." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). "To satisfy the
18 alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest
19 and ownership that the separate personalities of the two entities no longer exist and (2) that failure
20 to disregard their separate identities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073
21 (citation and quotations omitted). The Court begins with a presumption of corporate separateness
22 that is only overcome when justice so requires. *Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-
23 01613-HSG, 2020 WL 7428320, at *3 (N.D. Cal. Dec. 18, 2020).

24 Plaintiff's SAC fails to adequately allege, or proffer evidence sufficient to establish, that
25 the Canadian Entities are the alter ego of Mr. Higgins. Plaintiff alleges that "Mr. Higgins controls
26 EHI and 3GI and makes all decisions for them," "determines and dictates every facet of EHI and
27 3GI's businesses," and "has dictated that EHI and 3GI act interchangeably to serve as the mere
28 conduits of Mr. Higgins and one another." SAC ¶ 14. Further, Plaintiff alleges "EHI and 3GI

share identical equity ownership," have "identical officers and directors," and that Mr. Higgins "failed to hold actual board meetings, prepare minutes, or otherwise operate EHI and 3GI as actual, independent companies." *Id*. ¶9 –13.  Plaintiff's opposition argues that this satisfies the unity of interest prong of the alter ego test.  Opp. at 11.  But these allegations are largely the same type of conclusory claims that the Court previously found to be insufficient to establish alter ego jurisdiction.  Though the SAC identifies that the companies have the same officers and directors, it fails to allege any facts suggesting inadequate capitalization, lack of segregation of corporate records, or any concrete disregard for corporate formalities.  *See* Dkt. No. 42 at 6 (citing *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 998 (E.D. Cal. 2012) (finding that that an out-of-state natural person was not the alter ego of a corporation because even where the natural person was the common owner of a consolidated enterprise operating farms under various trade names, common ownership alone was insufficient to support disregard of the corporate form) and *In re Boon Glob. Ltd.*, 923 F.3d 643, 654 (9th Cir. 2019) (holding that jurisdiction cannot lie where there is no evidence of undercapitalization, failure to keep adequate records, or the free transfer of company assets)).  Accordingly, Plaintiff again has failed to establish a unity of interest among the Canadian Entities and Mr. Higgins, which defeats Plaintiff's alter ego-based claim of jurisdiction.[1]

### B. Derivative Claims

Plaintiff asserts all of his claims – except the Eleventh Cause of Action –  on behalf of himself and "derivatively on behalf of 3GL."  Defendants move to dismiss Plaintiff's derivative claims.  Mot. at 11.[2]  While it views the inclusion of this claim as symptomatic of the seeming

---

[1] Plaintiff argues in the alternative that he should be allowed to conduct jurisdictional discovery. Opp. at 17.  The Court previously rejected Plaintiff's similar request.  Dkt. No. 42 at 8–9.  For those same reasons, the Court, in its discretion, again denies the request.  *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  Plaintiff has failed to proffer a colorable basis for personal jurisdiction so as to be entitled to jurisdictional discovery as to these foreign entities.  *See Calix Networks, Inc. v. Wi-Lan, Inc.*, No. C-09-06038-CRB DMR, 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010).

[2] Plaintiff argues that "Defendants are barred from asserting new arguments . . . that could have been made in their first motion."  Opp. at 18.  However, "[f]ailure to state a claim is a nonwaivable defect and can be raised at any time." *Trachsel v. Buchholz*, No. C-08-02248-RMW, 2009 WL 86698, at *2 (N.D. Cal. Jan. 9, 2009) (citing *Aetna Life Ins. Co. v. Alla Medical Servs.*,

7

kitchen-sink nature of Plaintiff's approach here, the Court cannot dismiss the claim as a matter of law on this ground at this stage.

To determine whether a plaintiff's claim is direct or derivative, the Court applies the law of the state of incorporation. *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000). 3GL is an LLC incorporated in California. SAC ¶ 6. Under California law, an action is direct when a shareholder sues for injury to the shareholder's interest (or the interest of a class of shareholders). *Schuster v. Gardner*, 127 Cal. App. 4th 305, 311–12 (2005). In contrast, the action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets. *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 964 (2001). Applying these rules to LLCs, district courts within the Ninth Circuit have concluded that "if the gravamen of the wrong alleged in a complaint is an injury to a limited liability company, affecting its members only by diminishing their stake in the company, the suit is derivative." *Kanaan v. Yaqub*, No. 21-CV-09591-BLF, 2023 WL 3510381, at *3 (N.D. Cal. May 17, 2023). In contrast, district courts have found that claims brought by one LLC owner against another for breach of contract, declaratory relief, or fraud are not derivative but personal to the plaintiff. *Id*.

Cal. Corp. Code Section 17709.02 establishes the standing requirements for a member to pursue a derivative suit on behalf of a limited liability company. *Sirott v. Superior Ct. of Contra Costa Cnty.*, 78 Cal. App. 5th 371 (2022). The statute provides that "[n]o action shall be instituted or maintained in right of any domestic or foreign limited liability company by any member of the limited liability company unless" two conditions are met. *Id*; § 17709.02. First, the plaintiff must "allege[] in the complaint that the plaintiff was a member, of record or beneficially, at the time of the transaction or any part of the transaction of which the plaintiff complains." § 17709.02(1). Second, the plaintiff must "allege[] in the complaint with particularity the plaintiff's efforts to

---

*Inc.*, 855 F.2d 1470, 1474 (9th Cir.1988)). In the interests of efficiency and addressing this threshold question before even more fees are incurred in this heavily-litigated case, the Court will consider Defendants' argument.

8

secure from the managers the action the plaintiff desires or the reasons for not making that effort, and alleges further that the plaintiff has either informed the limited liability company or the managers in writing of the ultimate facts of each cause of action against each defendant or delivered to the limited liability company or the managers a true copy of the complaint that the plaintiff proposes to file." § 17709.02(2).

Defendants first argue that Plaintiff fails to allege compliance with the procedural requirements of § 17709.02. But as Plaintiff points out, the SAC alleges that "Plaintiff made a number of unsuccessful efforts to secure appropriate remedial measures from the Higgins [sic], including providing the Defendants a draft of the original complaint in this action in advance of its filing," and that "[t]his legal action was filed after the Higgins [sic] did not act to protect the interests of 3GL's members." SAC ¶ 23. Further, Plaintiff alleges that "now, and at all times relevant," he has held a "25% member interest in 3GL." *Id*. at ¶ 6. § 17709.02 requires Plaintiff to allege that he was a member of the LLC at the time of the transaction, and that Plaintiff took efforts to "secure from the managers the action the plaintiff desires and delivered to the LLC or the managers a true copy of the complaint that the plaintiff proposes to file." Plaintiff alleges that he is a member of 3GL, and that he attempted to secure remedial measures from Mr. and Mrs. Higgins before filing this action, and served them a copy of the complaint. Accordingly, at this stage Plaintiff has adequately pled compliance with the procedural requirements of § 17709.02.

Defendants also argue that Plaintiff "fails to allege conduct that would support derivative claims on behalf of 3GL" and thus these claims must be dismissed. Mot. at 11. The Court does not find Plaintiff's allegations to be so facially deficient so as to fail as a matter of law at the pleading stage. Plaintiff alleges that Defendants "duped [third parties] into depositing payments owed to 3GL into a Canadian bank account that actually belonged to Defendants." SAC ¶ 55. He also alleges that "the Higgins [sic] were engaging in systematic transactions using Mr. Pratt's signature without his authority to enrich themselves to the detriment of 3GL." *Id*. at ¶ 68. He alleges that as a result of Defendant's breach of their fiduciary duties 3GL "was harmed in the amount of at least $35,000,000." *Id*. at ¶ 111. At this stage, these claims are sufficient to support a derivative claim because, accepting the allegations as true, the SAC adequately alleges an injury

9

to the LLC as opposed to harm solely to Plaintiff's personal interest. *See Kanaan*, 2023 WL 3510381, at *3. Whether the factual record will bear out this theory, which the Court views as a likely stretch given that this case actually appears to be a straightforward business dispute between Plaintiff and the Higginses rather than a genuine "derivative suit," is for summary judgment or trial.

### C. Improper Distribution

Defendants also move to dismiss Plaintiff's Third Cause of Action for Improper Distribution. Mot. at 14. Defendants argue that Plaintiff has not demonstrated how 3GL suffers from potential insolvency or it is unable to pay its debts as they became due. Mot. at 15. In response, Plaintiff argues that the SAC "sets out specific factual allegations of 3GL's inability to pay its ordinary business debts as they became due, because of the Higgins' improper distributions." Opp. at 21.

The Court previously granted Defendants' motion to dismiss this claim for the same reason that Defendants have identified in the current motion. *See* Dkt. No. 42 at 13 ("Because Plaintiff has not demonstrated how 3GL suffers from potential insolvency or it is unable to 'pay its debts as they became due,' and cites no case law suggesting that simply making distributions from an entity that has outstanding debt violates the statute, the Court grants defendant's motion to dismiss Plaintiff's claim under the LLC Act based on the allegedly improper distribution."). However, Plaintiff's SAC has remedied this deficiency. Plaintiff alleges that "as a result of the excessive distributions of 3GL funds and profits to the Higgins, the Higgins caused 3GL to be unable to pay its business debts as they became due." SAC ¶ 69. Plaintiff identifies that on multiple occasions "3GL was unable to meet its employee payroll obligations when due (including in November 2021, December 2021, January 2022, and March 2022). 3GL also frequently lacked the funds necessary to pay vendors who had provided goods and services to 3GL when their invoices were due (including a printer who provided print marketing materials, as well as chemical and material suppliers). When Mr. Pratt sought to process these vendor invoices, Mrs. Higgins stated that 3GL was unable to pay these business debts because there were not enough funds in the ban." *Id*. These allegations narrowly allow this claim (which seems like yet another throw-in) to survive

dismissal, because they identify how 3GL suffered from potential insolvency.

## IV. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss. The Court **GRANTS** Defendants' motion to dismiss the Canadian Entities for lack of Personal Jurisdiction. This dismissal is without leave to amend, because Plaintiff has already amended twice and the Court concludes that further amendment would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (quotation omitted)). The Court **DENIES** the motion as to the derivative and improper distribution claims.

**IT IS SO ORDERED.**

Dated: 2/14/2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge